## WHELAN v. R. LACY, Inc., et al.
### No. 6627.

Court of Civil Appeals of Texas.
Texarkana.

June 12, 1952.

Rehearing Denied Sept. 4, 1952.

Abney, Abney & Baldwin, Marshall, for appellant.

Thompson, Knight, Wright, Weisberg & Simmons, John W. Rutland, Jr., Dallas, Prendergast & Prendergast, George Prendergast, Marshall, J. T. Harris, Longview, Ramey, Calhoun, Marsh, Brelsford & Sheehy, O. C. Funderburk, Tyler, for appellees.

HALL, Chief Justice.

On April 21, 1936, Mrs. Jennie Little, widow of L. Z. Little, executed an oil and gas lease to D. R. Johnson for a primary term of ten years covering an undivided one-half interest in a tract of 221.18 acres, more or less, of the S. N. Hall Survey in Harrison County. This tract of land will hereafter be referred to as 220 acres, and the lease as the Johnson lease. This lease was later assigned to R. Lacy, who began a well for gas on said premises in April, 1946.

The suit in the court below so far as this appeal is concerned, had for its purpose the cancellation of the Johnson lease and for recovery of one-half of the leasehold estate and one-half of seven-eighths of the production from the well less one-half of the cost of drilling and equipping the well.

At the conclusion of the testimony the trial court gave an instructed verdict for appellee with respect to the cancellation of the oil and gas lease but submitted all disputed issues of fact to the jury concerning the respective ownership of the plaintiffs to mineral interests in the tract of land under lease. There is no appeal form this last portion of the judgment. R. J. Whelan alone appeals from the peremptory instruc-

tion of the court with respect to the feature of cancellation.

Appellant R. J. Whelan purchased one-half of the minerals under the west one-half of the tract where the Lacy well is located. The Johnson lease provides with respect to the drilling of a well: "If, at the expiration of the primary term of this lease, oil or gas is not being produced on the leased premises *but lessee is then engaged in drilling for oil or gas,* then this lease shall continue in force so long as drilling operations are being continuously prosecuted on the leased premises," etc. (Italics ours.)

The undisputed testimony is that on April 12, 1946, appellee moved a bulldozer to the location of the Peal well No. 1 on the west half of the 220 acre tract; on April 14, 1946, the location was cleared, working pits and reservoirs dug, and a completed drilling rig was moved to the location. On April 20, 1946, a new draw works was delivered to the location, and on April 20 and 21, rigging-up was started. On April 25, 1946, the well was spudded, that is, actual drilling of a hole began. It is the contention of appellant that the clause quoted above *"but lessee is then engaged in drilling for oil or gas"* was not complied with by acts of Lacy in preparation for the well as above set out. It is appellees' contention that these acts of preparation for the actual drilling of a well was a compliance with the above quoted clause in the lease. There is no contention in this record of any lack of good faith on the part of Lacy after he actually started his work on the lease. It progressed steadily without any break until the well was completed on or about June 20, 1946, as a producer of gas and distillate. After a careful study of the authorities cited and the undisputed evidence, we have concluded that Lacy's act in going on the property on the 12th day of April with the bulldozer and his continuous work thereon until the well was completed as a producer was a compliance with the clause set out above. Summers on Oil and Gas, Vol. 2, Sec. 349, p. 256, states: "The general rule seems to be that actual drilling is unneces-

sary, but that the location of wells, hauling lumber on the premises, erection of derricks, providing a water supply, moving machinery on the premises and similar acts preliminary to the beginning of the actual work of drilling, when performed with the bona fide intention to proceed thereafter with diligence toward the completion of the well, constitute a commencement or beginning of a well for drilling operations within the meaning of this clause in the lease." To the same effect is Thornton Oil and Gas, Vol. 1, Sec. 164 (Pocket Part). It was held in Terry v. Texas Co., Tex.Civ. App., 228 S.W. 1019, that the placing timbers for erection of derrick and machinery, including boiler, on the ground where oil well was to be drilled, complied with provision of lease requiring lessee to " 'commence to drill' well" within certain period, the word "commence" being defined as "to perform the first act of." In Guleke v. Humble Oil & Refining Co., Tex.Civ.App., 126 S.W.2d 38, 39, the opinion states: "It (the lease) contained a provision substantially to the effect that if, at the expiration of the primary term, oil or gas was not being produced but the lessee was then engaged in drilling or re-working operations on the land, the lease should remain in force so long as such operations were prosecuted * * *." The lease in that case by its terms expired on November 4, 1936. The evidence of the witness Box, former owner of the land, was "that on the morning of November 5th, which was the day following the last day of the primary term of the lease, he went to the premises and out to where the location for the well had been made. He said there was material for the erection of the derrick, some pipe and a machine for drilling the water well located at the site but there was no machine or rig for drilling an oil well. He said several men were at work there and the first section of the steel derrick had been erected and they were working on the second section; that the water well was being worked on and one joint of the casing set for beginning the oil or gas well test. This was the only testimony introduced by either side with reference to what had been done by appellee in the way of

preparation for drilling the oil well. Obviously, this evidence did not prove appellee Phillips Petroleum Company had not begun preparations for drilling the oil well prior to midnight November 4, 1936, when the lease otherwise would have expired." The court held that such preparation was sufficient to satisfy the terms of the lease set out above. See also McCallister v. Texas Co., Tex.Civ.App., 223 S.W. 859 (writ refused); Durbin v. Osborne, 292 Ky. 464, 166 S.W.2d 841; Robinson v. Gordon Oil Co., 258 Mich. 643, 242 N.W. 795; Aldridge v. Gypsy Oil Co., 132 Okl. 13, 268 P. 1109; Fast v. Whitney, 26 Wyo. 433, 187 P. 192. It is our opinion that the clause "engaged in drilling for oil or gas" is satisfied by the preparation shown by the undisputed evidence in this case. Especially is this true when no lack of good faith is shown on the part of lessees in drilling the well to completion.

In our opinion this cause should be affirmed for another reason. It appears that on July 10, 1936, D. R. Johnson, owner of the original lease of a one-half undivided interest in the 220 acre tract of land granted to him by Mrs. Jennie Little on April 21, 1936, assigned same to W. C. Windsor and Edson Petroleum 'Company. On September 21, 1938, Mrs. Jennie Little in her own behalf and A. H. Peal, Hallie Peal and T. E. Little, devisees of L. Z. Little, deceased, partitioned the 220 acres of land, with respect to the surface, Mrs. Little receiving the east one-half and A. H. Peal, Hallie Peal and T. E. Little receiving the west one-half.

On January 21, 1939, all the devisees of Mr. and Mrs. Little executed an oil and gas lease covering an undivided one-half interest in the 220 acres of land to J. Z. Werby for a primary term of ten years. The devisees of Mrs. Little joined in the execution of this lease for the express purpose of leasing "whatever unleased interest, if any, they may possess in the above described land." On February 4, 1939, J. Z. Werby assigned the west one-half of the 220 acre tract to Edson Petroleum Company and W. C. Windsor.

By an instrument designated by the parties thereto as an assignment, dated April 11, 1939, duly recorded, the parties, devisees of Mr. and Mrs. Little, divided and set apart the mineral estate each set of devisees would thereafter have and hold in the 220 acre tract, the west one-half of said tract going to T. E. Little, A. H. Peal and Hallie Peal, and the east one-half going to Dee Knox, Annie Knox and Alvah Knox. In that assignment is the following significant statement: "And while in said lease of January 21, 1939, from T. E. Little et al. to. J. Z. Werby the property and interests are therein stated to be an undivided one-half interest in and to said entire 220 acres, more or less, and it was therein stated that the said Dee Knox, Annie Knox and Alvah Knox were joining therein for the purpose of leasing to said lessee whatever unleased interest, if any, they might have in said land, the said T. E. Little, Hallie Peal and A. H. Peal do hereby acknowledge and declare that said lease covers and includes all of their right, title, and interest in and to the west one-half of said 220 acres, more or less, for all of the purposes and with all of the rights and privileges and upon all of the terms and conditions set out or contained in said lease of January 21, 1939, aforesaid, just as though the interests and properties covered by said lease of January 21, 1939, had been therein described and specified as all of the interests of said lessors in said 220 acres, more or less; and that the assignees, as aforesaid, of J. Z. Werby, of said lease of January 21, 1939, as to the west one-half of the lands therein described, to-wit: Edson Petroleum Company and W. C. Windsor, their successors and assigns, shall have the right to preserve and maintain said lease in force as herein corrected or amended, by the payment or tender on or before January 21, 1940, and on or before the 21st day of January of subsequent years during. the primary term, as and in the manner specified in said lease (as modified by this agreement in that all rentals which may be paid under said lease are to be paid, tendered or deposited to the credit of T. E. Little, Hallie Peal and A. H. Peal) of an annual delay rental of fifty cents (50¢) per acre for said west one-half, or so much acreage thereof as they

may desire to pay or tender rentals upon." The mineral deed form A. H. Peal et al. to Dr. Crawford under which R. J. Whelan, appellant, holds was executed after the execution of all the instruments referred to herein.

Both the Johnson lease and the Werby lease covering the west one-half (110 acres) were assigned to Rogers Lacy, appellee here, upon which he drilled a gas well to production on June 20, 1946. On March 19, 1946, all owners of the surface, leasehold, minerals and overriding royalty on the 220 acre tract of land executed a partition agreement. That instrument was signed by fourteen parties which included two corporations, setting aside to A. H. Peal, Hallie Peal and T. E. Little, the west one-half of the 220 acre tract of land, subject to: (1) The Johnson lease executed April 21, 1936, insofar as it covered the west one-half only of the 220 acre tract, and which it is asserted is owned by Rogers Lacy, appellee; (2) oil, gas and mineral lease dated 21st day of January, 1939, referred to above, from T. E. Little et al., to J. Z. Werby; and (3) the mineral deed from A. H. Peal, Hallie Peal and T. E. Little, grantors, to Dr. Harry Crawford, as grantee, dated April 12, 1945, and duly recorded conveying an undivided one-half interest to the minerals in the west one-half of the 220 acre tract of land, more or less. This partition agreement was signed, as stated above, by all the interested parties, including both Rogers Lacy and Dr. Harry Crawford. Appellant, R. H. Whelan, claims his interest through Dr. Harry Crawford, and asserts that Dr. Harry Crawford held his and certain other interests in trust. There is nothing in the record to show any knowledge, either actual or constructive, on the part of appellee of such an arrangement between Dr. Harry Crawford and appellant.

In such circumstances we have concluded that should we be mistaken in our holding first above that appellee Lacy by his acts in preparation for drilling the gas well, done and performed before the expiration of the* primary term under the Johnson lease, must be construed under the terms of that lease as "engaged in drilling for oil or gas" on the date of the expiration of same, then we think clearly under the terms of the second lease, executed January 21, 1939, under which Lacy held the west one-half of the Little tract of land, the well was drilled well within the primary term of that lease, because the January 21, 1939 lease did not expire until January 21, 1949, and the well was completed on June 20, 1946.

So it is our conclusion that under either of the leases discussed above appellee Lacy was within time specified in each of said leases in drilling the gas well.

Finding no error in the record, the judgment of the trial court is in all things affirmed.