Opinion filed May 25, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed May 25, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-04-00126-CV 

 

                                                    __________

 

                                        COY BARGSLEY, Appellant

 

                                                             V.

 

                   PRYOR
PETROLEUM CORPORATION, J. MICHAEL

                       MCCARTY,
AND LARRY A. GODWIN, Appellees

 



 

                                          On
Appeal from the 90th District Court

 

                                                       Stephens
County, Texas

 

                                                   Trial
Court Cause No. 27,291

 



 

                                                                   O
P I N I O N

 








The trial court entered a partial summary judgment
and later a final judgment upon a jury verdict holding that an earlier oil and
gas lease to Coy Bargsley had terminated and that a later oil and gas lease to
Pryor Petroleum Corporation covering the same property was in effect.  The trial court enjoined Bargsley from
removing casing from wells located on the property.  Further, the trial court awarded the Pryor
appellees $53,602.56 as the amount of production proceeds arising after the
Bargsley lease terminated but also awarded $16,109.77 to Bargsley for his costs
of production found to have been incurred in good faith following termination
of his lease.[1]   The trial court also awarded attorney=s fees to Pryor in the amount of
$50,000.  Provisions were made for
additional attorney=s fees on
appeal.  We affirm in part and reverse and
remand in part.

Bargsley brings five issues on appeal.  He first urges that the trial court erred
when it granted a partial summary judgment. 
Next, in his second issue, Bargsley complains that the trial court
wrongly placed the burden of proof in an issue which it submitted to the
jury.  In issue three, Bargsley argues
that there was either no evidence or factually insufficient evidence to support
the jury=s answer
that there was no production of oil in paying quantities at the expiration of
the primary term of his lease.  Bargsley
asserts in his fourth issue on appeal that there was either no evidence or
factually insufficient evidence to support the trial court=s award of 100% of the oil production
to the Pryor appellees.  Bargsley
challenges, in his fifth issue on appeal, the trial court=s action in enjoining him from removing
casing from the wells.

Standard of Review on Summary Judgment

When reviewing a traditional motion for summary
judgment, the following standards apply: (1) the movant for summary judgment
has the burden of showing that there is no genuine issue of material fact and
that it is entitled to judgment as a matter of law; (2) in deciding whether
there is a disputed material fact issue precluding summary judgment, evidence
favorable to the nonmovant will be taken as true; and (3) every reasonable
inference must be indulged in favor of the nonmovant and any doubts resolved in
its favor. Tex. R. Civ. P.
166a;  Goswami v. Metro. Sav. and Loan
Ass=n,
751 S.W.2d 487, 491 (Tex. 1988); Nixon v. Mr. Prop. Mgmt. Co., Inc., 690
S.W.2d 546, 548‑49 (Tex. 1985); City of Houston v. Clear Creek Basin
Auth., 589 S.W.2d 671, 676 (Tex. 1979).

The Summary Judgment Evidence








Indulging every reasonable inference in Bargsley=s favor, resolving any doubts in his
favor, and taking as true evidence favorable to him, the summary judgment
evidence is as follows.  The lease made
the subject of this lawsuit covers about 320 acres in Stephens County.  In 1976, Bargsley obtained an oil and gas lease
on the property.  Bargsley drilled three
gas wells and one oil well under the terms of the 1976 lease.  In the late 1980s or early 1990s due to
depressed product prices and his poor health, Bargsley ceased to produce from
the lease, and it terminated.  Even
though the lease terminated, Bargsley left his equipment on the lease; and he
maintained the electrical service to the lease.

On December 9, 1996, Bargsley acquired a new oil
and gas lease on the same property.  This
lease was for a one year primary term and as long thereafter as oil or gas or
either of them was produced from the property under lease. 

            The 1996 lease contained the following terms:

If, at the expiration of the primary term of this
lease, oil or gas is not being produced on the leased premises, but lessee is
then engaged in drilling for oil or gas, then this lease shall continue
in force so long as drilling operations are being continuously prosecuted on
the leased premises; and drilling operations shall be considered to be
continuously prosecuted if not more than sixty (60) days shall elapse between
the completion or abandonment of one well and the beginning of operations for
the drilling of a subsequent well.  If
oil or gas shall be discovered and produced from any such well or wells drilled
or being drilled at or after the expiration of the primary term of this lease,
this lease shall continue in force so long as oil or gas shall be produced from
the leased premises.

 

Bargsley argues that he was engaged in Aoperations@
during the primary term and that the continuous operations provision kept his
lease alive past the end of the primary term.[2]  Those operations consisted of long-stroking[3]
the existing oil well in November 1997; laying a pipeline  to the gas wells (beginning in November 1997
and completing on January 20, 1998); doing electrical work on the lease;
allowing the electricity to remain on; installing, checking, and repairing flow
lines; replacing a tank; and allowing all of the equipment to remain on the
wells.








While these activities under
certain circumstances might be considered to be Aoperations,@ 
that is a question we do not address as these Aoperations@ are not Adrilling
operations@ as a
matter of law.  The operations undertaken
by Bargsley were not preliminary to the actual work of drilling.  The cases that Bargsley relies upon are
distinguishable.  For instance, in Whelan,
the lease contained a similar drilling operations provision.  Whelan v. R. Lacy, Inc., 251 S.W.2d 175
(Tex. Civ. App.CTexarkana
1952, writ ref=d
n.r.e.).  The Whelan court held
that preparing a location and moving a drilling rig on site were actual
operations preparatory to drilling and, therefore, kept the lease alive.  Id.

In Ridge Oil Co. v. Guinn
Investments, Inc., 148 S.W.3d 143 (Tex. 2004), the Texas Supreme Court,
although confronted with temporary and permanent cessation of production issues
in that case, informed us that drilling operations require much more than
appears in the summary judgment proof in this case.  There, the lease provided for a primary term
of five years Aand as
long thereafter as oil or gas, or either of them is produced from said land by
the lessee, or as long as operations are being carried on.@ 
Id. at 147-48. 
Guinn had obtained a drilling permit, attempted to pay damages to gain
entry to the property, and had driven a wooden stake into the ground to mark
the location of the proposed well.  The
lease in Guinn did not require Adrilling
operations@ but,
rather, required only Aoperations.@ 
Even under those circumstances, the court held that the steps taken by
the lessee were not enough to continue the lease beyond the primary term.  Here, it is undisputed that no well was ever
commenced on the lease following the execution of the 1996 lease, even though
the type of operations required under the lease were Adrilling
operations.@ 








Bargsley maintains that the court
in Guinn cited this court=s
opinion in Morrison v. Swaim, 220 S.W.2d 493, 494-96 (Tex. Civ. App.CEastland 1949, writ ref=d n.r.e.), for the proposition that
reworking activities such as Acleaning
a well, building a fence, shooting a well with dynamite, pulling casing,
running rods and tubing, cleaning and repairing the tank and installing power
constituted evidence of >drilling
operations.=@ However, first of all, there were no
reworking activities in Morrison: 
the lessee was completing the drilling of a well that was begun during
the primary term of the lease.  In
contrast to the case before us, this court in Morrison detailed the many
steps taken by the lessee to complete the well. 
Further, Morrison did not involve simply Aoperations@ as argued by Bargsley.  The lease in Morrison called for Adrilling operations,@ and that is what the lessee there
did.  We also note that this court=s holding in Morrison was
ultimately based on the fact that no jury issue was submitted or requested
regarding the existence of drilling operations at the end of the primary
term.  Therefore, the evidence had to
conclusively establish the lack of such drilling operations, and it did
not.  Thus, this court presumed that the
trial court found the existence of such drilling operations.  Id. at 497.

Bargsley relies upon Utley v.
Marathon Oil Co., 31 S.W.3d 274 (Tex. App.CWaco
2000, no pet.).  Utley involved a
continuous operations clause which referred to Aoperations
for drilling, mining, or reworking.@  In its instructions to the jury, the trial
court defined Aoperations@ as Aactual
work being done in a good faith endeavor to cause a well to produce oil and/or
gas in paying quantities.@  Id. at 278.  There was no objection to the
instruction.  The Waco Court of Appeals
reviewed the evidence in light of that instruction and found no Areason to disturb the [jury=s] finding.@  Id. at 279.  However, even though there was some evidence
regarding construction of a pipeline, the court specifically stated that it did
not reach the issue of whether such construction constituted Aoperations.@  Id. at 280.  Further, the lease in this case did not refer
simply to Aoperations@ or to Areworking
operations.@  Bargsley was not engaged in drilling
operations at the end of the primary term, and the trial court did not err if
it so held in its partial summary judgment.

In his reply brief, Bargsley
makes it clear that he Adoes
not contend that he was entitled to a >reasonable
time to market his gas.=@ 
Bargsley instead maintains that he was Aentitled
to a reasonable time to lay pipe to connect the gas wells to the purchaser.@ 
He acknowledges that in Reid the Texas Supreme Court rejected
that argument under certain circumstances. 
Gulf Oil Corp. v. Reid, 337 S.W.2d 267, 270 (Tex. 1960).  However, he adds that the court in Reid did
say that laying and connecting pipe were Adrilling
operations@ such as
would extend the lease past its primary term. 
We disagree that Reid stands for that proposition; the court
specifically excluded such a holding.

In Reid, Gulf Oil
Corporation began the drilling of a well a few days before the primary lease
term had expired.  Those drilling
operations continued after the end of the primary term until the well was
completed.  Because there were no market
facilities, the well was capped.  Gulf
tendered shut-in royalties, but the tender was late and was refused.  Some five months after completion of the
well, Gulf entered into a contract for the sale of the gas.  Approximately ten months after the well was
completed, gathering lines had been laid and connected to the well.  The court held that the shut-in royalties
were late and the lease terminated. 
Regarding the question of whether the laying of pipelines constituted Adrilling operations,@ the court said, AThat question we do not reach.@ 
Id.








Because we hold that there were
no drilling operations at the end of the primary term, we need not address
Bargsley=s
argument that the lease required that he completely abandon the premises before
it could be said that there were no drilling operations being conducted on the
premises.  We do note, however, that that
is not what the lease provides.  The
lease provides that drilling operations are to be deemed to be Acontinuously prosecuted if not more
than sixty (60) days shall lapse between the complete abandonment of one well
and the beginning of operations for the drilling of another well.@ 
Here, there were no drilling operations at the end of the primary term;
that provision does not apply.  

Bargsley next argues that summary
judgment should not have been granted as to the entire property because under
the lease he was entitled to retain twenty acres around each well that fell
within the following lease provision:

In case of cancellation or
termination of this lease for any cause, lessee shall have the right to retain
under the terms hereof twenty (20) acres of land around each oil or gas well
producing, being worked on or drilling hereunder.

 

 Under the summary judgment evidence in this
cause, any production in paying quantities under the lease would hold the
entire 320 acres and this provision is not implicated.  There may be other circumstances in the
future which might bring about cancellation or termination of the lease that
are not related to production; however, those circumstances are not before
us.  The parties agree that there is a
fact question related to production, and that issue was submitted to a jury.  Appellant argues that there is also a fact
question regarding whether the oil well was Abeing
worked on.@  We agree that under the circumstances of this
case, if the lease were cancelled or terminated for reasons unrelated to
production, Bargsley would be entitled to retain twenty acres around each oil
or gas well being worked on. We have set forth summary judgment evidence above
that, although not qualifying as Adrilling
operations,@ presents
a genuine issue of material fact concerning whether the oil well was Abeing worked on@
upon termination of the lease.  That
issue should be submitted to a jury if the jury finds that there was not
production sufficient to extend the primary term of the lease.  The trial court erred if it granted summary
judgment based upon a determination that, as a matter of law, the oil well was
not being worked on at the end of the primary term.  








The trial court granted the
partial motion for summary judgment without specifying the grounds for granting
it.  Therefore, we must uphold the partial
summary judgment if any of the grounds advanced by Pryor were meritorious.  Dow Chem. Co. v. Francis, 46 S.W.3d
237, 242 (Tex. 2001); Carr v. Brasher, 776 S.W.2d 567, 569 (Tex.
1989).  Bargsley=s
first issue on appeal is overruled except as it pertains to the issue of
whether the oil well was being worked on as set forth in the retained acreage
provision of the 1996 lease at the time of the termination of the 1996 lease if
the lease was terminated due to a lack of production in paying quantities.  If the fact-finder finds under proper
instructions that there was no production in paying quantities at the end of
the primary term, then the fact-finder should be asked whether the oil well was
Abeing worked on@
at the end of the primary term as provided for in the acreage retention clause.

Jury Charge Error

Bargsley argues in his second
issue on appeal that the trial court improperly placed the burden of proof
regarding the existence of production upon him. 
We use an abuse of discretion standard when we review such a
complaint.  Texas Dep=t of Human Servs. v. E.B.,
802 S.W.2d 647, 649 (Tex. 1990).  When a
trial court=s action
is arbitrary, unreasonable, and without reference to any guiding rules or
principles, it has abused its discretion. 
Goode v. Shoukfeh, 943 S.W.2d 441 (Tex. 1997).

The burden was upon Pryor to
establish the lack of production in paying quantities.  Morrison, 220 S.W.2d at 495.  We agree with Bargsley that the burden of
proof was misplaced.

Bargsley objected:  A[In]
connection with Question No. 1, the defendant (Bargsley) would submit that the
issue as framed that the burden of proof is incorrect.@  Pryor argues that the objection was not
specific enough to advise the trial court of the exact complaint made and that
any error is waived.  Pryor also argues
that the burden of proof was not placed in the question but, rather, in the
instructions.  Pryor argues that, because
Bargsley neither objected to nor submitted an instruction in which the burden
of proof was correctly placed, any error is waived.  We disagree.

Tex.
R. Civ. P. 277 provides that a trial court shall, when it is feasible to
do so, submit cases to juries upon broad-form questions.  The rule also allows a trial court to place
the burden of proof in an instruction rather than in the question.  Here, the trial court generally instructed
the jury in relevant part:

Answer AYes@ or ANo@ to all questions unless otherwise
instructed.  A AYes@ answer must be based on a
preponderance of the evidence.  If you do
not find that a preponderance of the evidence supports a AYes@
answer, then answer ANo.@

            

This question was then submitted to the jury:

Question No. 1

 

Do you find that oil in paying
quantities was produced from The Premises under the terms of The 1996 Lease on
or before December 9, 1997?

 

AProduction
of oil in paying quantities@
means that production must be sufficient to pay the lessee a profit, though
small, over operating and marketing expenses, although it may never repay the
cost of drilling the well.  It does not
mean a well merely capable of producing oil, but rather, means actual
production of oil from the well which is sold in the market at a profit.

 

The
jury answered, ANo.@

The
instruction and the question improperly place the burden upon Bargsley to prove
that there was production in paying quantities at the end of the primary
term.  Bargsley informed the trial court
of his objection regarding the placing of the burden of proof.  Tex.
R. Civ. P. 274 requires a party who objects to a jury charge to Apoint out distinctly the objectionable
matter and the grounds of the objection.@  We hold that Bargsley did that:  his objection was specific enough to bring to
the trial court=s
attention the point that the burden of proof was misplaced.

Having
found that the burden of proof was misplaced in connection with production, we
must now decide whether the error probably caused the rendition of an improper
judgment.  If it did, then the judgment
of the trial court must be reversed.  Kiefer
v. Cont=l
Airlines, Inc., 10 S.W.3d 34, 37 (Tex. App.CHouston
[14th Dist.] 1999, pet. denied); see also Tex. R. App. P. 44.1(a)(1). 
In determining what effect an erroneous jury charge has had on a
judgment, we take into consideration the pleadings, the evidence, and the
entire charge.  Kiefer, 10 S.W.3d
at 37.








We
hold that the error in the jury charge probably caused the rendition of an
improper judgment.  This question is not
just one of many issues before the jury. 
Whether there was production in paying quantities under the 1996 lease
was the critical issue in this case.  Under
the instructions given to the jury in this case, Bargsley was erroneously
required to prove not only that there was production but also that such
production was in paying quantities.  The
burden was clearly upon Pryor to prove that there was no such production.  Bargsley correctly points out that the jury
easily could have thought that neither side could prove this issue and, because
the court had told them that it was Bargsley=s
burden, it could only find that Bargsley had failed to establish that there was
production in paying quantities.[4]  Bargsley=s
second issue on appeal is sustained.

In
view of our holding on Bargsley=s
first issue on appeal, we need not discuss the sufficiency-of-the-evidence
issues raised by him in issues three and four.

In
his fifth issue on appeal, Bargsley argues that the trial court wrongfully
enjoined him from removing the casing from any wells on the property that were
capable of or were in fact producing oil or gas.  The court found that the AThe Premises@
were capable of and were in fact productive of oil and gas.  The trial court held that under such
circumstances the removal of the casing would be against public policy and
would constitute a waste of natural resources in that it would destroy the well
bores and thereby reduce the net oil recoverable from the premises.  The court did not err in denying Bargsley the
right to remove the casing from the wells which are reasonably capable of
producing for so long as they are reasonably capable of producing.  Eubank v. Twin Mountain Oil Corp., 406
S.W.2d 789 (Tex. Civ. App.CEastland
1966, writ ref. n.r.e.).  Pryor concedes
that the cases support this position but urges this court to overrule
them.  We leave that matter to the Texas
Supreme Court.  Bargsley=s fifth issue on appeal is
overruled.  We note that, if Pryor fails
to prove a lack of production in paying quantities at the end of the primary
term, then the trial court should dissolve the injunction.

                                                               This
Court=s Ruling








The
trial court=s
declaration that Coy Bargsley=s
lease terminated for lack of production in paying quantities is reversed, and
that issue is remanded.  Consequently, to
the extent that the trial court declared that the Pryor lease was superior to
the Bargsley lease, the judgment is also reversed and remanded.  Further, to the extent that the partial
summary judgment addresses the fact issue of whether the oil well was Abeing worked on,@
it is reversed, and that issue should be presented to the fact-finder in
accordance with this opinion.  Likewise,
the award of attorney=s
fees is reversed and remanded for further consideration.  In all other respects, the judgment of the
trial court is affirmed.

 

 

JIM
R. WRIGHT

CHIEF
JUSTICE

 

May
25, 2006

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.











[1]Appellees will be referred to collectively as APryor@ unless otherwise noted.





[2]The Pryor appellees agree that there was a fact
question regarding whether there was production of oil at the end of the
primary term.  That question was not
decided by summary judgment but, rather, was presented to a jury.  Issues related to that jury verdict will be
discussed later in this opinion. 





[3]ALong-stroking@  is the process where the length of the pump=s stroke is increased resulting in increased pumping
capabilities.





[4]The jury did find, in Question No. 2, that, after the
last date of the one year primary term, Bargsley produced oil and gas from the
premises in good faith; and the trial court awarded him $16,109.77 as recovery
of costs of operations Asubsequent to the termination@ of the lease.