### GOBLE *v.* GOFF.

MINES AND MINERALS—OIL AND GAS—EQUALLY DIVIDED COURT.
> Decree declaring that defendant lessees under oil and gas lease had no interest in the oil and gas under plaintiff's land, that their lease has expired, and that intervenor's lease was valid and binding is affirmed by an equally divided court.

Appeal from Van Buren; Mosier (Carl D.), J. Submitted January 3, 1950. (Docket No. 18, Calendar No. 44,557.) Decided May 18, 1950. Rehearing denied June 27, 1950.

Bill by Elwin W. Goble and wife against Carl C. Goff and another to void an oil lease. J. H. Fitchett intervened. Decree for plaintiffs. Defendants appeal. Affirmed by an equally divided court.

---

REFERENCES FOR POINTS IN HEADNOTES
24 Am Jur, Gas and Oil, § 163.

*Harry Pell,* for plaintiffs.

*Anderson & Anderson,* for defendants.

*Lewis R. Williams,* for intervenor.

Boyles, C. J. (*for affirmance*).  In this case a bill of complaint has been filed seeking a decree to void a certain oil lease.  In 1944, plaintiffs became the owners of certain land in Bloomingdale township, Van Buren county, and in 1948 gave an oil lease to one DeVries covering said land.  Defendants, Carl C. and L. D. Goff, claimed that they had a valid pre-existing oil lease on the land, obtained in August, 1941, from the then owners of the land who had sold it to plaintiffs in 1944.  Plaintiffs thereupon filed the bill of complaint in this case, claiming that the said Goff lease had expired and had been abandoned, and asking that plaintiffs be decreed to be the owners of the land free from any claims under the defendants' alleged lease.  In the meantime DeVries had assigned his lessee's interest in his oil lease to one Fitchett, who was granted leave to intervene in the case, by stipulation.  After issue was joined the court took testimony and entered a decree to the effect that defendants' lease had been terminated and was of no further force and effect as to plaintiffs' land, that plaintiffs' oil lease to DeVries and the assignment by DeVries to Fitchett were valid and binding, and by the decree removed any cloud on plaintiffs' interest in the land that might be caused by the defendants' prior lease.  The defendants, Carl C. and L. D. Goff, appeal.

The essential facts are not disputed.  On August 21, 1941, plaintiffs' grantors executed a valid oil lease to Carl C. Goff, a half-interest in which was later assigned to L. D. Goff.  This lease covered the land which the plaintiffs acquired in 1944, as

well as other land, part of which was adjacent to the land sold to plaintiffs. The lease provided that:

"If no well be commenced on said land on or before the 21st day of November 1941, this lease shall terminate as to both parties, unless the [*sic*] lessor (lessee) shall, on or before that date, pay or tender to the lessor or to the lessor's credit, in the ........ bank at ........ ... or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of ........ dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for ........ months from said date."

There is no claim of payment or tender prior to November 21, 1941, to extend the term of the lease, and plaintiffs have never received any oil royalties or payments. Plaintiffs claim that the lease expired November 21, 1941, by failure to commence an oil well before that date. But the defendants claim that an oil well was commenced on the land described in their oil lease, before November 21, 1941. Defendant Carl Goff testified that he moved an oil-well rig onto the land described in his lease and made a slush pit and started drilling an oil well prior to November 21, 1941. Before the effective date of PA 1939, No 61 (CL 1948, §§ 319.1–319.27 [Stat Ann 1949 Cum Supp §§ 13.139(1)–13.139(27)]), this would have complied with the requirement of the lease. See *Robinson* v. *Gordon Oil Co.* (1932), 258 Mich 643.[*]

However, the defendants failed to comply with the mandatory requirements of PA 1939, No 61, *supra,* prior to the expiration date of their lease on November 21, 1941, or prior to the time the defendants started to drill an oil well. The purpose of that enactment is stated in the act as follows:

---

[*] Superseded on another question by *Robinson* v. *Gordon Oil Co.,* 266 Mich 65.

"Within the past few years extensive deposits of oil and gas have been discovered which have added greatly to the natural wealth of the State, and if properly conserved can bring added prosperity for many years in the future to our farmers and land owners, as well as to those engaged in the exploration and development of this great natural resource. The interests of the people demand that exploitation and waste of oil and gas be prevented so that the history of the loss of timber may not be repeated.

"It is accordingly the declared policy of the State to protect the interests of its citizens and land owners from unwarranted waste of gas and oil and foster the development of the industry along the most favorable conditions and with a view to the ultimate recovery of the maximum production of these natural products. To that end this act is to be construed liberally in order that effect may be given to sound policies of conservation and the prevention of waste and exploitation." CL 1948, § 319.1 (Stat Ann 1949 Cum Supp § 13.139[1]).

Said act provides that the director of conservation shall act as supervisor of wells, with authority to make rules and regulations, to control the locating, drilling and plugging of wells drilled for oil and gas, fix the spacing of wells, require surety bonds of owners, producers and operators, and fix the drilling unit for each pool. The act sets up an advisory board, requires that each well permitted to be drilled upon any drilling unit be located approximately in the center, and directs the conservation commission to act as an appeal board.

Section 23 of the act (CL 1948, § 319.23 [Stat Ann 1949 Cum Supp § 13.139(23)]) provides that:

"No person shall drill or begin the drilling of any well for oil and gas * * * until the owner directly or through his authorized representatives shall have first made a written application to drill any such well and filed with the supervisor a satisfactory

surety bond as provided in section 6 of this act, and received and posted in a conspicuous place at the location of the well a permit in accordance with the rules, regulations and requirements or orders made and promulgated by the supervisor. A fee of $25 shall be charged for a permit to drill a well for oil and gas."

Pursuant to the provisions of said act the supervisor of wells and the conservation commission adopted rules and regulations, effective May 1, 1941 (Administrative Code 1944, p 157), rule 1 of which provided that:

"No person shall drill or begin the drilling of any well for (1) oil or gas  *  *  *  until the owner or his authorized representative has complied with the following requirements:

"A. Completely and accurately filled out, signed and filed a written application on forms prescribed by the supervisor.

"B. Filed a surety bond as hereinafter provided.

"C. Paid the fee required by law.

"D. Received and posted in a conspicuous place at the well location a written permit to drill the well."

The defendants did not comply with the above requirements prior to November 21, 1941, or prior to beginning to drill for oil on their lease, although they were given 3 months to do so by the terms of the lease, before it would expire under the express condition that "if no well be commenced on said land on or before the 21st day of November, 1941, this lease shall terminate as to both parties." By their failure to comply with the statute the desired result sought to be accomplished, for the protection of the interests of landowners, operators, producers and lessees in the said area, was nullified. The defendants argue that their lessors, plaintiffs' grantors, waived the right to claim that the lease had expired. But nei-

ther the landowner, lessor nor lessee could waive compliance with the statute.

The record shows that while the defendants have drilled wells on their adjacent land included in their lease, no well has ever been drilled on the land acquired by the plaintiffs, nor have they ever received any rents or royalties from oil during the time they have owned their land. Plaintiffs claim that the value of their land has been depleted by the withdrawal of oil by the defendants from adjacent lands. In equity, the defendants should not be allowed to benefit from the lease upon which they rely, breached as a consequence of their own failure to comply with the statute. We agree with the circuit judge who properly concluded that under the statutory restrictions then in effect, the defendants did not commence a well for oil and gas prior to November 21, 1941, and that for that reason the lease had terminated. See *J. J. Fagan & Co.* v. *Burns,* 247 Mich 674 (67 ALR 522).

The court decreed that the defendants had no interest in the oil and gas under plaintiffs' land, and that their lease had expired. The court also held that the lease of Fitchett, intervenor, was valid and binding. Plaintiffs have accepted the decree, not having cross-appealed, and the defendants are not interested in any controversy between plaintiffs and the intervenor. In view of our conclusion that the defendants have no valid oil lease on plaintiffs' land, other questions raised by appellants do not require discussion.

Affirmed, with costs.

Reid, Carr, and Sharpe, JJ., concurred with Boyles, C. J.

DETHMERS, J. (*for reversal*). I agree with Mr. Chief Justice BOYLES that before the effective date of PA 1939, No 61, defendants' actions in moving a drilling rig onto the premises and digging a slush pit prior to November 21, 1941, would have amounted to timely commencement of a well as contemplated by the lease, according to our holding in *Robinson v. Gordon Oil Co.*, 258 Mich 643. I do not agree that Act No 61 has the effect of rendering that which before its enactment would have been commencement of a well no longer commencement merely because the drilling permit requisite under the act had not been received before the well actually was commenced, nor until some 2 weeks after November 21st.

While contracts for the performance of illegal acts may be held void and unenforceable, a valid contract for the performance of lawful acts (such as the commencing of a well and the extending of the term of a lease here) may be enforced at the instance of the party who has performed, even though he may have performed in an illegal manner, particularly if the illegality of his performance consists solely of failure to have obtained the permit required therefor by law. For cases in point and an exposition of the law on this subject see: *Keith Furnace Co.* v. *MacVicar*, 225 Iowa 246 (280 NW 496); *Fox* v. *Rogers*, 171 Mass 546 (50 NE 1041); *Ogilvy* v. *Peck*, 200 Wash 122 (93 P2d 289); *Cochran* v. *Burdick*, 63 App DC 150 (70 F2d 754; certiorari denied, 293 US 561 [55 S Ct 73, 79 L ed 661]).

Decree should be reversed and a decree entered here dismissing plaintiffs' bill of complaint, with costs of both courts to defendants.

NORTH, BUTZEL, and BUSHNELL, JJ., concurred with DETHMERS, J.