Naomi GRAY and Gloria
Gray, Appellants,

v.

HELMERICH & PAYNE, INC., Apache Corporation, American Quasar Petroleum Company of New Mexico, Viking Petroleum Reserves, Inc., and Viking Petroleum, Inc., Appellees.

No. 07–91–0233–CV.

Court of Appeals of Texas,
Amarillo.

July 21, 1992.

Rehearing Overruled Aug. 19, 1992.

Garner, Stone & Lovell, P.C., John H. Lovell and John W. Reeder, Amarillo, for appellants.

Underwood, Wilson, Berry, Stein & Johnson, Thomas R. Dixon and Gregory M. Bednarz, Culton, Morgan, Britain & White, Charles R. Watson, Jr., Amarillo, for appellees.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

REYNOLDS, Chief Justice.

Naomi Gray and Gloria Gray perfected this appeal from a final summary judgment

rendered in their trespass and breach of contract actions. The bases of their actions were the termination of an original mineral lease and the breach of a contract to renew the lease; but the trial court, summarily determining that the original lease was perpetuated beyond its primary term, granted a final summary judgment adverse to the Grays.

The Grays attack the judgment with eight points of error. By the first point, they contend the original lease terminated as a matter of law; by the other points, they challenge the propriety of the summary judgment concerning the "second" lease. Because the trial court correctly determined the lease was perpetuated beyond its primary term, the "second" lease was unenforceable as a matter of law for lack of consideration. Consequently, we will overrule the points of error and affirm.

On 14 June 1976, the Grays—as owners of the surface and minerals in the southeast quarter of Section 77, Block 13, H. & G.N. RR Co. Survey, in Wheeler County, comprising 160 acres, more or less—executed a mineral lease with Roger Allspaugh as lessee. The leasehold interest was subsequently assigned to Helmerich & Payne, Inc. Afterward, Helmerich & Payne assigned an undivided 25% interest to Apache Corporation, an undivided 25% interest to El Paso Natural Gas Company, an undivided 8% interest to American Quasar Petroleum Company of New Mexico and an undivided 3% interest to Viking Petroleum, Inc., which later changed its corporate name to Viking Petroleum Reserves, Inc.

The lease was for a primary term of five years ending 14 June 1981 and as long thereafter as oil, gas or other mineral was produced. A portion of paragraph 9 in the lease provided that:

Notwithstanding any contrary provision, if lessee commences mining, drilling or reworking operations on said land or on a consolidated leasehold estate at any time while this lease is in force, this lease shall remain in force as provided by any provision hereof and for any longer time during which said operations, or any additional operations, are prosecuted with no cessation of more than sixty consecutive days.

The lease contained a pooling clause and, on 9 June 1981, while negotiating for a renewal lease, the leasehold interest owners executed a declaration by which the Grays' acreage was pooled into a consolidated estate comprising 640 acres, more or less, and filed it of record on 11 June 1981.

The same day, June 11, Helmerich & Payne leveled a drill site on acreage pooled with, and adjacent to, the Grays' land. The next day, June 12, Helmerich & Payne applied to the Texas Railroad Commission for a "W-1" permit to drill the "Friars 1-77" well on the site. The Commission's rules and regulations provide that "Operations of DRILLING ... shall not be commenced until the PERMIT has been granted by the commission and the waiting period, if any, has terminated...." Tex. R.R. Comm'n, 16 Tex.Admin. Code § 3.5(a)(1) (West Sept. 1, 1988).

The following day, June 13, the day before the end of the primary term of the original lease, Helmerich & Payne performed the first road construction and installed a cattleguard. The drilling permit was received from the Commission on 6 July 1981, and the actual drilling of the well commenced nine days later, ultimately resulting in a dry hole.

The Grays, pleading that the original lease terminated by its own terms on 14 June 1981 as a matter of law, initiated the action underlying this appeal, seeking to hold the original leasehold interest owners liable for trespass, and breach of a contract to renew the lease which, they alleged, had been effected by an offer and acceptance. Subsequently, the parties agreed that El Paso Natural Gas Company, one of the leasehold interest owners, would be, and the company was, dismissed from the suit with prejudice.

In due course, Apache Corporation, another of the leasehold interest owners, moved for partial summary judgment on the grounds that the original lease was perpetuated beyond its primary term by drilling operations commenced prior to ex-

piration of the primary term, and that a renewal lease was never finalized. The Grays opposed the motion, responding that the original lease expired at the end of its primary term because no drilling permit was issued during the primary term, and that genuine material fact issues exist regarding the contract for a renewal lease.

A hearing was held on Apache's motion for partial summary judgment on 21 June 1990. Thereafter, the remaining leasehold interest owners filed a motion for partial summary judgment on the ground that the primary drilling work commenced by Helmerich & Payne perpetuated the original lease beyond its primary term.

Approximately a month after the 21 June 1990 hearing, the court signed an order granting a partial summary judgment. Reciting that at the hearing all parties were represented by counsel, who

> agreed that the only issue that would have prevented perpetuation of the original lease beyond its primary term was [the Grays'] contention that the drilling permit must have been obtained from the Texas Railroad Commission in order for the lease to have been perpetuated beyond its primary term by the preliminary drilling activities undertaken prior to the primary term,

and who agreed that the issue was a question of law, the court ordered that the original lease was perpetuated beyond the expiration of its primary term on 14 June 1981.

Subsequently, the leasehold interest owners moved for summary judgment on the remaining issues, one of the grounds for which was a lack of consideration for any renewal lease. After the Grays responded, the court granted a summary judgment in favor of the leasehold interest owners on all issues in the cause. The previously granted partial summary judgment was merged into the latter summary judgment, constituting a final judgment disposing of the entire cause. *H.B. Zachry Co. v. Thibodeaux*, 364 S.W.2d 192, 193 (Tex.1963).

By their 21 June 1990 agreement, the parties recognized that, by operation of well-settled Texas law on the lease's paragraph 9 provision, Helmerich & Payne's preliminary drilling activities before the expiration of the primary term perpetuated the lease beyond its primary term, *Whelan v. R. Lacy, Inc.*, 251 S.W.2d 175, 176–77 (Tex.Civ.App.—Texarkana 1952, writ ref'd n.r.e.), unless, as the Grays contend in their first point of error, obtaining the Commission's drilling permit was a prerequisite to any drilling operations. Since the Commission's rule requiring a drilling permit before commencement of drilling operations was not mentioned in the lease, the Grays suggest their contention is one of first impression in Texas.

In developing their contention, the Grays submit that because parties entering into mineral leases are charged by law with notice of the Commission's applicable rules and regulations, *Ryan Consolidated Petroleum Corp. v. Pickens*, 155 Tex. 221, 285 S.W.2d 201, 204 (1955), *cert. denied*, 351 U.S. 933, 76 S.Ct. 790, 100 L.Ed. 1462 (1956), the parties in this cause were on notice of the Commission's § 3.5(a)(1) rule, *supra*, since it went into effect on 1 January 1976 before the execution of the present lease on 14 June 1976. This law, they argue, prohibited drilling operations until after the drilling permit was received; thus, there could be no commencement of drilling operations sufficient to perpetuate the lease before the drilling permit was received. Then, they conclude, because the permit was received on 6 July 1981 after the expiration of the primary term on 14 June 1981, the lease terminated at the end of its primary term as a matter of law.

Absent any local authority directly supporting their contention, the Grays offer *Goble v. Goff*, 327 Mich. 549, 42 N.W.2d 845 (1950), to uphold their position. In *Goble*, the lessee moved an oil well rig onto the leased land, made a slush pit, and began drilling an oil well prior to the expiration date of the lease; however, it was not until two weeks after the expiration date of the lease that the lessee received the written permit, required by a Michigan conservation statute, as well as by the rules and regulations promulgated under the statute, to be received and posted before a person "shall drill or begin the drilling of any well

for oil and gas." The trial court concluded that under the statutory restrictions, the lessee did not commence a well prior to the expiration date of the lease, and that the lease had terminated. Although the Michigan Supreme Court justices were of the unanimous view that the lessee's actions would have complied with the lease before the effective date of the conservation act, their evenly divided views concerning the effect of the act on the lease resulted in an affirmance of the trial court's judgment. Four justices, being of the view that the requirements of the act were mandatory and that the lessee did not comply with them, agreed with the trial court's conclusion. 42 N.W.2d at 846-47. The other four justices would not agree that the timely commencement of a well as contemplated by the lease was no longer commencement merely because the drilling permit had not been received before the well was actually commenced. 42 N.W.2d at 847.

■ Even if based upon identical facts, decisions of courts of other jurisdictions are no more than persuasive, and then only to the extent that their reasoning is regarded as logical. *Mauzy v. Legislative Redistricting Board*, 471 S.W.2d 570, 573 (Tex. 1971). Contrary to the Grays' offer, we are not persuaded to accept the *Goble* decision as validating their contention that, under Texas law, a drilling permit was a prerequisite to any drilling operations under the lease in this cause.

■ Under Texas law, an oil and gas lease involves property rights of the lessor and lessee. *W.T. Waggoner Estate v. Sigler Oil Co.*, 118 Tex. 509, 19 S.W.2d 27, 28–29 (1929). The Commission's function is to administer the conservation laws and, when in doing so by granting a permit to drill a well, it does not undertake to adjudicate property rights. *Magnolia Petroleum Co. v. Railroad Commission*, 141 Tex. 96, 170 S.W.2d 189, 191 (1943). Then, because the Grays' lease did not provide for obtaining a drilling permit before commencement of drilling operations to perpetuate the lease beyond its primary term, the Commission's § 3.5(a)(1) rule, *supra*, did not operate to interpose that provision in the lease. *Cf. Jones v. Killingsworth*, 403

S.W.2d 325, 328 (Tex.1965) (holding that the acts of the Railroad Commission do not operate to extend the restrictive terms of a lease).

It follows that obtaining the drilling permit was not a prerequisite to the preliminary drilling operations which, the parties agreed, otherwise perpetuated the Grays' lease beyond its primary term. Thus, the trial court correctly rendered summary judgment decreeing that the lease was perpetuated beyond its primary term. The Grays' first point of error is overruled.

■ Our disposition of the first point foreshadows our decision on the Grays' remaining points. With the perpetuation of the lease beyond its primary term, the Grays were unable to convey by a "second" or renewal lease the leasehold interest already owned by the lessees. As a result, the "second" lease advocated by the Grays was unenforceable as a matter of law for lack of consideration. *Mathis v. Texas Intern. Petroleum Corp.*, 627 F.Supp. 759, 763 (W.D.Tex.1986). The Grays' points of error two through eight are overruled.

Accordingly, the judgment is affirmed.