NUMBER 13-06-061-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


VERITAS ENERGY, LLC, Appellant,


v.
 


BRAYTON OPERATING CORP., ET AL., Appellees.

 

On appeal from the 135th District Court 


of Jackson County, Texas.


 


MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Benavides 


Memorandum Opinion by Justice Rodriguez



 This is a lease termination dispute over a 275 acre mineral lease in Jackson County,
Texas. By seven issues, appellant, Veritas Energy, LLC (Veritas), contends the trial court
erred in granting summary judgment in favor of appellees, Sundown Energy, Inc.
(Sundown), and Brayton Operating Corporation and the Selected Non-Operating Interest
Owners (Brayton). (1) We reverse and remand in part and affirm in part.

I. Factual Background


 This case involves an oil, gas, and mineral lease (the Miner Lease) dated June 6,
2000, between Ira and Margaret Sklar, as lessors, and R. C. Miner, Jr., as lessee. Veritas
took assignment of the lease from Miner on February 14, 2003. The dispute in this case
arises over whether back dragging of grass with a back hoe constituted operations within
the meaning of the lease.

 The Miner Lease had a three-year primary term that expired on June 6, 2003. The
lease provided that if operations were not conducted on or before the first anniversary
date--in this case on or before June 6, 2003--the lease would terminate as to both parties. 
The lease defined "operations" as

 for and any of the following: drilling, testing, completing, reworking,
recompleting, deepening, plugging back or repairing of a well in search for
or in an endeavor to obtain production of oil, gas, sulphur or other minerals,
excavating a mine, production of oil, gas, sulphur or other mineral, whether
or not in paying quantities.

 At approximately 9:30 a.m. on June 5, 2003, Beck Bros., Inc., a company hired by
Veritas, took a backhoe to the curve of an existing road on the Sklar's property and "back
dragged" the grass from the curve to the highway. (2) Unable to complete its work due, in
part, to a light rain that had been falling since noon that day, Beck Bros. stopped its work
between 3:30 p.m. and 4:00 p.m. On June 7, 2003, the Sklars executed an oil and gas
lease with Brayton (the Brayton Lease). Brayton entered into a joint operating agreement
with Sundown and the other appellees on August 13, 2003, and, thereafter, drilled and
completed the Sklar No. 1 Well.

II. Procedural Background

 On January 8, 2004, Veritas filed its original petition against Brayton and the Sklars
for trespass, conversion of oil, gas, and constituent hydrocarbons after it was produced
from the Sklar lands, tortious interference with a contract between appellant and the
Sklars, and, alternatively, for declaratory judgment and suit to quiet title with respect to the
Miner Lease. On June 18, 2004, Veritas filed its first amended petition non-suiting the
Sklars without prejudice, adding Sundown and the selected non-operating interest owners,
and adding a claim for accounting of the sale of gas and condensate from the Sklar No.
1 Well. On May 13, 2005, Sundown moved for summary judgment on the grounds that
Sundown was a non-operating interest owner acting in good faith and that it received no
net profit from the well in question. On July 5, 2005, Sundown, Brayton, and selected non-operating interest owners filed their respective motions for summary judgment, each based
on Veritas's failure to conduct sufficient activities on the Miner Lease and to take necessary
actions to extend the 2000 lease. Non-operating interest owners Tauber Exploration &
Production Co. (Tauber) and Carnes Natural Gas, Ltd. (Carnes) were not named as
summary judgment movants. On July 18, 2005, Veritas filed its second amended petition
and included claims for unjust enrichment and monies had and received from the Sklar
Well.

 On November 14, 2005, the trial court signed a judgment granting all summary
judgment motions. The judgment provided as follows:

 Having considered the defendants' summary judgment motions, the
summary judgment record, the plaintiff's response and the arguments of
counsel, the Court GRANTS the following summary judgment motions:


 (1) Sundown Energy's Original Motion for Summary Judgment, filed on
May 13, 2005;


 (2) Sundown Energy's Motion for Summary Judgment Based on the 

 Plaintiff's Failure to Extend the Lease, filed on July 1, 2005; and


 (3) Brayton's and Selected Non-Operating Interest Owners' Motion for
Summary Judgment, filed on July 1, 2005.


The trial court ordered that Veritas take nothing against the defendants. All relief,
requested but not expressly granted, was denied. The order also stated that the "judgment
finally disposes of all parties and claims and is appealable." This appeal ensued.

III. Standard of Review

 An appellate court reviews the grant or denial of a traditional motion for summary
judgment de novo. See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Tex.
Commerce Bank Rio Grande Valley v. Correa, 28 S.W.3d 723, 726 (Tex. App.-Corpus
Christi 2000, pet. denied). To prevail, the movant has the burden of showing that there is
no genuine issue of material fact, and thus the movant is entitled to judgment as a matter
of law. Tex. R. Civ. P. 166a(c); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex.
1991). Summary judgment is proper if the defendant disproves at least one element of
each of the plaintiff's claims or, alternately, conclusively establishes each element of an
affirmative defense to each claim. Velsicol Chem. Corp. v. Winograd, 956 S.W.2d 529,
540 (Tex. 1997) (per curiam); Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex.
1997). In deciding whether there is a genuine issue of material fact, evidence favorable
to the non-movant will be taken as true, and all reasonable inferences and doubts shall be
resolved in the non-movant's favor. Shah v. Moss, 67 S.W.3d 836, 842 (Tex. 2001).

IV. Analysis

A. Failure to Extend the Miner Lease

 By its second and third issues, Veritas contends that the trial court erred in granting
summary judgment in favor of Sundown and Brayton on the basis that Veritas failed to
extend the Miner Lease beyond its primary term. Veritas claims that a genuine issue of
material fact remains because its activities constituted "operations" as defined in the Miner
Lease and those "operations" extended the lease beyond its primary term.

 The summary judgment evidence establishes that the Miner Lease had a primary
term of three years. If no operations were conducted before the end of the primary term,
the lease terminated. The lease defined "operations" as "for or any of the following: 
drilling, testing, completing, reworking, recompleting, deepening, plugging back, or
repairing of a well." Neither party has alleged ambiguity in the lease, and we agree
that there is no ambiguity; therefore, we will not look beyond the provisions of the
lease to interpret the word "operations" as it relates to drilling. See Gibson v. Turner,
156 Tex. 289, 294 S.W.2d 781, 783 (1956). Moreover, Veritas asserts only that it
performed operations related to drilling. The threshold issue, then, is whether Veritas
performed "drilling or for drilling" operations within the meaning of the lease. We
conclude that it did not.

 Veritas relies on the affidavits of Gus Tucker, the manager of Veritas, and
Clyde Marek, an employee of Beck Bros. to support its position that it performed
operations that extended the Miner Lease. The Tucker affidavit set out, in relevant
part, that after the lease was assigned to Veritas the following occurred:

 1. On the morning of June 5, 2003, . . . Beck Bros., Inc. met [Tucker] at
the Sklar lease for the purpose of commencing operations for drilling. .
. . ;


 2. [Tucker] knew that the law required that [he] make an entry onto Mr.
Sklar's lands because [he] had the good faith intent to drill a well on the
Sklar's lands and that an entry was required. [He] instructed personnel
from Beck Bros., Inc. to make an entry onto the Sklar's lands and they
did so. The entry was made by a back hoe [sic], back dragging from the
curve in Mr. Sklar's gravel road back to the highway. [Tucker] instructed
Beck Bros., Inc. to make this entry for the purpose of extending the Sklar
lease beyond its primary term because [he] had a good faith intent to
drill a well on the Sklar's property. [Tucker] personally witnessed the
backhoe driver drive up to the curve in Mr. Sklar's gravel road on
property leased in the Miner/Sklar lease, drop his bucket and back drag
the backhoe to delineate the course of the road to be built for the
purpose of drilling a well on the Sklar's property. . . ;


 3. A light rain had been falling since prior to 12:00 (noon) time on June
5, 2004, and operations on that day were terminated at approximately
3:30 P.M. or 4:00 P.M. Operations for constructing the road were
resumed on June 9th or 10th, and were thereafter prosecuted to tie the
road into Mr. Sklar's gravel road . . . ; and,


 4. [Tucker] told [Darrell Sklar] that [he] did have a lease because [he]
had made an entry on his father's property and intended to drill a well on
the Sklar's lands.


 Marek's affidavit provided, in relevant part, the following:

 1. Some time prior to June 5, 2003, Beck Bros., Inc. was hired by
Veritas Energy, LLC, and specifically Gus Tucker of that company, to
construct a road for access to and upon properties in Jackson County,
Texas, owned by Ira and Margaret Sklar . . . . On June 5, 2004, my
crew and I met Gus Tucker of Veritas Energy at the Sklar location. That
was approximately 9:30 a.m. on the morning of June 5, 2003. Mr. Ira
Sklar was present on the location during some of the time we were there
and I had conversations with him for a while. He knew we were working
and observed our work;


 2. Under my supervision, a backhoe was brought to the location and
was utilitzed to mark where the road was to go as it joined an existing
road on Mr. Sklar's property. Mr. Tucker had instructed me to make an
entry onto the Sklar's property on June 5th, and my crew did so. Beck
Bros., Inc. took its backhoe to the curve in the road, . . . dropped its
bucket, and then "back dragged" the grass all the way back to the
highway area;


 3. We were not able to complete our work that day due to several
factors. One, we were waiting on the Texas Department of
Transportation to tell us what size culvert pipe should be installed at the
entrance from the highway, and there had been a light rain falling since
some time before noon on that day. I believe that Beck Bros., Inc.
ceased its operations on June 5, 2003[,] at or about 3:30-4:00 o'clock in
the afternoon;


 4. On June 9th or 10th, 2003, Beck Bros., Inc. resumed operations for
the construction of the road into and upon the Sklar property and,
thereafter, completed such construction on or about June 11th. This
work included setting and cementing the tin horn, which is the metal
culvert pipe, hauling gravel from Rexco, and placing gravel on the area
which had been back dragged, through the railroad right-of-way, and up
to the curve in the existing road . . . . Beck Bros., Inc. graveled the new
road and tied it into the existing road at the curve of the existing road, .
. . ; and,


 5. Based on the survey done by Mr. Cardenas, it is clear that Beck
Bros., Inc. entered onto the Sklar property and "backdragged" from the
Sklar's property back to the highway.

 It is undisputed the primary term of the Miner Lease expired on June 6, 2003. There
is no evidence of operations occurring prior to June 5, 2003. (3) Veritas's summary
judgment evidence established that, on June 5th, 2003, Beck Bros., a dirt work
company hired by Veritas, used a backhoe to back drag grass from the curve in the
road on the Sklar's property to the highway area. Later that same day, because of
light rain, Beck Bros. stopped the activity and did not resume work on the road until
June 9th or 10th, after the primary term of the lease. Taking evidence favorable to
Veritas as true and resolving all reasonable inferences and doubts in its favor, see
Shah, 67 S.W.3d at 842, we conclude that the evidence established only that one day
before the lease expired, Beck Bros. dragged a backhoe across grass from the curve of
a road on the Sklar property to the highway.

 In support of its argument, Veritas relies on Humphreys v. Skelly Oil Co., 83 F.2d
989, 992 (5th Cir. 1936) (explaining that, under the terms of the lease, the terms
"operations for the drilling of a well" and "drilling operations" are used interchangeably);
Ridge Oil Co., Inc. v. Guinn Invests., Inc., 148 S.W.3d 143, 158, 160 (Tex. 2004) (holding
that the lessee did not conduct activities calculated to obtain production and its minimal
activities, consisting of planting stakes, obtaining a drilling permit, and paying surface
damages, failed to perpetuate the lease that provided for a primary term of five years
"and as long thereafter as oil or gas, or either of them is produced from said land by
the lessee, or as long as operations are being carried on"); Gray v. Helmerich & Payne,
Inc., 834 S.W.2d 579, 581 (Tex. App.-Amarillo 1992, writ denied) (parties agreeing that
performing the first road construction and installing a cattleguard before the end of the
primary term satisfied a requirement of commencement of drilling or reworking operations
so that issue was not before the court); Atl. Richfield Co. v. Hilton, 437 S.W.2d 347, 355
(Tex. Civ. App.-Tyler 1969, writ ref'd n.r.e.) (providing that "when the lessor wrongfully
repudiates an oil and gas lease and puts the lessee on notice thereof, the benefits that
inure to the owner of the lease as a result thereof is the right or privilege to suspend
operations under the lease contract pending a determination of the controversy"); Peterson
v. Robinson Oil & Gas Co., 356 S.W.2d 217, 220 (Tex. Civ. App.-Houston 1962, no writ)
(setting out that "commencement of drilling operations" generally includes beginning
preliminary actions usually associated with actual drilling on the premises, undertaken in
good faith, and diligently proceeding to completion of the well); Whelan v. Lacey, 251
S.W.2d 175, 176-77 (Tex. Civ. App.-Texarkana 1952, writ ref'd n.r.e.) (stating that actual
drilling was unnecessary and concluding that the lease clause "engaged in drilling for oil
or gas" was satisfied by preparation shown including clearing location, digging working pits
and reservoirs, moving in a completed drilling rig, delivering a new draw works to the
location and starting the rigging-up); and Guleke v. Humble Oil & Refining Co., 126 S.W.2d
38, 41-42 (Tex. Civ. App.-Amarillo 1939, no writ) (providing that the lease remained in
effect so long as drilling or reworking operations were prosecuted with no cessation of
more than thirty days, and approximately five days before the end of the primary term
lessee made a location for the well, the next day brought to the location material for a steel
tower and other material including cement and pipe, dug a slush pit and well for water, later
erected the steel derrick, and did not cease work at any time until gas was produced). 
These cases provide propositions of law from the gas and oil industry. However, they
provide no support for Veritas's argument regarding "operations" in this case. In fact, in
each case where it was found that the lease extended into its secondary term, there was
considerably more activity toward conducting drilling operations than that undertaken by
Veritas. This Court is not persuaded to expand the law under the facts of this case to
include as "operations" such minimal activity on the last day of a lease.

 Although Tucker stated that he intended to drill a well, we cannot conclude that the
mere back dragging of grass with a back hoe on the last day of the primary term,
apparently to mark the location of a road, was "drilling" or was "for drilling" a well. This
minimal activity does not constitute "operations" within the meaning of the lease provisions
and did not serve to extend the Miner Lease beyond its primary term. See Ridge Oil, 148
S.W.3d at 158 ("Even assuming that the stake was driven into the well site during this
interval, and taking into account the fact that [the lessee] obtained a drilling permit [ ], and
was attempting to pay surface damages, this does not raise a fact question as to whether
'operations were being carried on' sufficient to sustain the lease."); Bargsley v. Pryor
Petroleum Corp., 196 S.W.3d 823, 826 (Tex. App.--Eastland 2006, pet. denied)
(explaining that while various activities preliminary to actual spudding of a well have been
held to constitute "drilling operations," such as selection of a drill site, placing timbers on
the ground to be used in drilling operations, leveling the well location, and moving
bulldozers and maintainers to selected well sites and the digging of pits and reservoirs, the
lessee's activities, including long-stroking the existing oil well, laying a pipeline, doing
electrical work, installing, checking, and repairing flow lines, replacing a tank, keeping the
electricity on, and keeping the equipment on the lease, while under certain circumstances
might be considered "operations," are not "drilling operations" as a matter of law); Hickey
v. Spangler, 358 S.W.2d 216, 219 (Tex. Civ. App.-Texarkana 1962, writ ref'd n.r.e.)
(commenting on the meaning of the term ''drilling or reworking operations'': ''The work
done, such as flaring the well, sales contract and other negotiations, together with the other
facts developed, do not constitute either drilling or reworking as those terms are used in
the referenced clause of the Hickey lease''); Reid v. Gulf Oil Corp., 323 S.W.2d 107, 115
(Tex. Civ. App.-Beaumont 1959), aff'd, Gulf Oil Corp. v. Reid, 337 S.W.2d 267, 269 (Tex.
1960) ("[A]s used in the lease, the term 'drilling operations' was intended to embrace all of
the physical and mechanical aspects of bringing about the production of oil or gas in paying
quantities . . . It would be idle to argue that the term was intended to embrace nothing
more than the mere cutting of [a] hole. . . ."); see also Forney v. Ward, 25 Tex. Civ. App.
443, 62 S.W. 108, 108-09 (Houston 1901, no writ) (determining that hauling lumber onto
the site on the last day of the lease alone was not sufficient to constitute commencement
of drilling); cf. Guleke, 126 S.W.2d at 41-42 (providing that lease remained in effect when
activities before the end of the primary term included making a location for the well and
bringing to the location material for a steel tower and other material including cement and
pipe).

 We conclude, therefore, that the trial court did not err in granting summary judgment
in favor of Sundown and Brayton on the basis that Veritas failed to extend the Miner Lease
beyond its primary term. We overrule Veritas's second and third issues. Having concluded
that summary judgment was properly granted on that basis, we need not consider Veritas's
first, fourth, fifth, and sixth issues because they are not necessary to the final disposition
of the appeal. See Tex. R. App. P. 47.1; Branton v. Wood, 100 S.W.3d 645, 647 (Tex.
App.-Corpus Christi 2003, no pet.) (citing Carr v. Brasher, 776 S.W.2d 567, 569 (Tex.
1989); Boren v. Bullen, 972 S.W.2d 863, 865 (Tex. App.-Corpus Christi 1998, no pet.))
(providing that we will affirm the summary judgment if any of the theories are meritorious).

B. Finality of Judgment

 In its seventh issue, Veritas contends that the trial court erred in signing the final
judgment because all parties in the case were not joined as movants in the motions for
summary judgment granted by the trial court and also because the defendants' motions did
not ask for judgment on all claims. Veritas argues that because the November 14, 2005
judgment did not dispose of all parties and issues in the case, it is not a final judgment and
that the case should be remanded for adjudication of the unresolved claims and disposition
of the remaining parties.

1. All Parties

 Veritas asserts that claims against Tauber and Carnes have not been disposed of
by the trial court. We agree.

 Brayton's motion for summary judgment named all selected non-operating interest
owners as movants except for defendants, Tauber and Carnes. Brayton admits that there
is an error in the motion; specifically Brayton describes it as a scrivner's error that excluded
Tauber and Carnes from the definition of selected non-operating interest owners. Brayton
argues, however, that the motion was filed on behalf of all Brayton defendants, including
Tauber and Carnes, and that the unnamed defendants were identically situated to the
other non-operating interest owners who were named. Brayton supports its argument by
explaining that (1) the motion set out that "[d]efendants move for summary judgment" and
"none of the non-operating interest owners directed the actions of the operator to such a
degree as to assume the operator's liability," and (2) the affidavits of non-operating interest
owners Tauber and Carnes were attached to the motion.

 In support of its argument, Brayton relies on Texas Rule of Civil Procedure 71 and
Wilie v. Signature Geophysical Servs., Inc., 65 S.W.3d 355, 362 (Tex. App.-Houston [14th
Dist.] 2001, pet. denied). Rule 71 refers to mistakenly designated pleas or pleadings, and
Wilie involves a typographical error--the granting of a motion for summary judgment with
the name of the party misspelled. See Tex. R. Civ. P. 71 (providing that a mistakenly
designated plea or pleading shall be treated as if it had been properly designated); Wilie,
65 S.W.3d at 362 (looking to the substance of the pleading and holding the trial court did
not err in granting a motion for summary judgment in which a name was misspelled). 
Neither provides support for Brayton's argument.

 In this case, the motion did not mistakenly designate the pleading. The motion did
not misspell Tauber's name or Carnes's name. As acknowledged by Brayton, the motion
excluded Tauber and Carnes from the definition of selected non-operating interest owners. 
While we note that their affidavits were attached and that Tauber and Carnes are identified
on appeal and in other pleadings as selected non-operating interest owners, they were not
identified as movants in the summary judgment motion.

 There is no presumption of finality for summary judgment orders. See Lehmann v.
Har-Con Corp., 39 S.W.3d 191, 205-06 (Tex. 2001). And although the judgment here
contains unequivocal statements of finality, neither Brayton nor Sundown identified Tauber
or Carnes as summary judgment movants. See id. We conclude, therefore, that the
claims against Tauber and Carnes have not been disposed of by the trial court, and the
judgment is erroneous, but final. See Jacobs v. Satterwhite, 65 S.W.3d 653, 655 (Tex.
2001) (quoting Lehmann, 39 S.W.3d at 200) ("[I]f a defendant moves for summary
judgment on only one of [multiple] claims asserted by the plaintiff, but the trial court renders
judgment that the plaintiff take nothing on all claims asserted, the judgment is
final--erroneous, but final.").

2. All Claims Veritas also contends that the trial court erred in granting summary judgment on its
causes of action for accounting, unjust enrichment, and money had and received, and on
its declaratory judgment action and its suit to quiet title because Veritas added these claims
in its second amended petition and appellees did not amend their motions for summary
judgment to address the claims. "Summary judgment, however, may be granted on later
pled causes of action if the grounds asserted in the motion for summary judgment show
there can be no recovery on the later pled cause of action." Jones v. Ill. Employers Ins. of
Wausau, 136 S.W.3d 728, 744 (Tex. App.-Texarkana 2004, no pet.) (citing Sharpe v.
Roman Catholic Diocese of Dallas, 97 S.W.3d 791, 797 (Tex. App.-Dallas 2003, pet.
denied); Pinnacle Data Servs., Inc. v. Gillen, 104 S.W.3d 188, 197 (Tex. App.-Texarkana
2003, no pet.)).

 The crux of Veritas's claims against appellees is that the Miner Lease was extended
beyond its primary term by its actions on June 5, 2003. The trial court concluded, and we
have agreed, that Veritas failed to extend the Miner Lease. Because Veritas's added
claims are also based upon its alleged extension of the Miner Lease, the trial court's finding
is also dispositive of Veritas's declaratory judgment action and its suit to quite title, and its
accounting, unjust enrichment, and money had and received claims. The grounds
asserted in the motions for summary judgment showed that Veritis could not recover on
the later pleaded causes of action, therefore, the added claims have been disposed of by
the trial court.

 Accordingly, we overrule Veritis's seventh issue to the extent it complains of the
claims in its amended petition. We sustain the issue as to Tauber and Carnes.

V. Conclusion


 The trial court's order is reversed and remanded in part and affirmed in part. 
Specifically, summary judgment was improper on the claims against defendants, Tauber
Exploration & Production Co. and Carnes Natural Gas, Ltd. Thus, we reverse the portion
of the order granting summary judgment in favor of Tauber Exploration & Production Co.
and Carnes Natural Gas, Ltd. and remand the case to the trial court for further
proceedings. The remainder of the trial court's judgment is affirmed.

 

 

 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and 

filed this 14th day of February, 2008.

1. The Selected Non-Operating Interest Owners are Flatmax Energy, L.P., Frio Pecan Farm, L.P.,
Sundown Energy, Inc., Tauber Exploration & Production Co., Carnes Natural Gas, Ltd., Lowe Partners, L.P.,
Donald J. Snow, Wiedmann Oil & Gas, LLC, The Seven LS Family Limited Partnership, John H. Seibert, Jr.,
David P. Desenberg, Shelly C. Collins, Robert S. Barnard, John S. Bockelman, Curtis W. Zamzow, Daniel G.
Stephens, and James T. Parrino. 
2. Appellees refer to the feeder road, not the highway.
3. Veritas asserts that it is clear from the Tucker affidavit that Tucker rode through the Sklar lands for
the purpose of examining those lands for a suitable drilling location and for preparing a surface survey. After
inspecting the Sklar lands, Tucker hired a geophysicist and a geoscientist for the purpose of evaluating the
three-dimensional seismic which was available regarding the Sklar lands and providing opinions with respect
to the sub-surface strata in the vicinity of the Sklar lands. A geologist reviewed those opinions. Tucker also
employed a petroleum engineer to prepare a cost estimate--an authority for expenditure--for the drilling of
a well proposed to be drilled on the Sklar property. However, these activities occurred before Veritas
purchased the Miner Lease and therefore cannot be considered "operations" that would serve to extend the
lease.


 According to Tucker's affidavit, after the lease was purchased, Tucker assembled data and materials
which would become offering documents for the purpose of selling interests in the Veritas Energy Sklar No.
1 well. This is not evidence, however, of operations--drilling or for drilling--as defined in the lease at issue. 
See, e.g., Ridge Oil Co. v. Guinn Invs., Inc., 148 S.W.3d 143, 159 (Tex. 2004) (holding that operations to
secure a market or a purchaser, after the primary term expires, that were not accompanied by manual
operations on the premises, may not be classified as drilling operations); Gulf Oil Corp. v. Reid, 161 Tex. 51,
337 S.W.2d 267, 272 (Tex. 1960) ("In the light of settled rules we think the term 'operations' cannot be
extended to include a search on the part of lessee for a market or to secure a purchaser.").


 Tucker also stated in his affidavit that he ordered the services of Geochemical Exploration Services,
Inc., a gas soil analysis company, for the Sklar lands and that personnel from this company conducted some
analyses on the Sklar lease but were asked to leave by Darrell Sklar. Tucker provides no time frame for this
activity. Furthermore, other than referencing this portion of Tucker's affidavit, appellant does not provide any
authority or argument supporting the position that this activity constituted "operations" that would serve to
extend the lease. See Tex. R. App. P. 38.1(h). Rather, Veritas's argument focuses on its activity related to
road work.