Coy **BARGSLEY**, Appellant,

v.

**PRYOR PETROLEUM CORPORATION, J. Michael McCarty, and Larry A. Godwin, Appellees.**

No. 11–04–00126–CV.

Court of Appeals of Texas, Eastland.

May 25, 2006.

824

Charles W. McGarry, Law Office of Charles W. McGarry, Dallas, Tommy Warford, Turner, Seaberry & Warford, Eastland, David C. Bakutis, Bakutis, McCully & Sawyer, P.C., William M. Warren, Loe, Warren, Rosenfield, Kaitcher & Hibbs, P.C., Fort Worth, for appellant.

John M. Key, Russell, Leonard, Key & Key, Wichita Falls, for appellees.

Panel consists of WRIGHT, C.J., and McCALL, J., and STRANGE, J.

## OPINION

JIM R. WRIGHT, Chief Justice.

The trial court entered a partial summary judgment and later a final judgment upon a jury verdict holding that an earlier oil and gas lease to Coy Bargsley had terminated and that a later oil and gas

lease to Pryor Petroleum Corporation covering the same property was in effect. The trial court enjoined Bargsley from removing casing from wells located on the property. Further, the trial court awarded the Pryor appellees $53,602.56 as the amount of production proceeds arising after the Bargsley lease terminated but also awarded $16,109.77 to Bargsley for his costs of production found to have been incurred in good faith following termination of his lease.[1] The trial court also awarded attorney's fees to Pryor in the amount of $50,000. Provisions were made for additional attorney's fees on appeal. We affirm in part and reverse and remand in part.

Bargsley brings five issues on appeal. He first urges that the trial court erred when it granted a partial summary judgment. Next, in his second issue, Bargsley complains that the trial court wrongly placed the burden of proof in an issue which it submitted to the jury. In issue three, Bargsley argues that there was either no evidence or factually insufficient evidence to support the jury's answer that there was no production of oil in paying quantities at the expiration of the primary term of his lease. Bargsley asserts in his fourth issue on appeal that there was either no evidence or factually insufficient evidence to support the trial court's award of 100% of the oil production to the Pryor appellees. Bargsley challenges, in his fifth issue on appeal, the trial court's action in enjoining him from removing casing from the wells.

### Standard of Review on Summary Judgment

When reviewing a traditional motion for summary judgment, the following stan-

dards apply: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. Tex.R. Civ. P. 166a; *Goswami v. Metro. Sav. and Loan Ass'n,* 751 S.W.2d 487, 491 (Tex.1988); *Nixon v. Mr. Prop. Mgmt. Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex. 1985); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 676 (Tex. 1979).

### The Summary Judgment Evidence

Indulging every reasonable inference in Bargsley's favor, resolving any doubts in his favor, and taking as true evidence favorable to him, the summary judgment evidence is as follows. The lease made the subject of this lawsuit covers about 320 acres in Stephens County. In 1976, Bargsley obtained an oil and gas lease on the property. Bargsley drilled three gas wells and one oil well under the terms of the 1976 lease. In the late 1980s or early 1990s due to depressed product prices and his poor health, Bargsley ceased to produce from the lease, and it terminated. Even though the lease terminated, Bargsley left his equipment on the lease; and he maintained the electrical service to the lease.

On December 9, 1996, Bargsley acquired a new oil and gas lease on the same property. This lease was for a one year primary term and as long thereafter as oil or

---

1. Appellees will be referred to collectively as "Pryor" unless otherwise noted.

gas or either of them was produced from the property under lease.

The 1996 lease contained the following terms:

> If, at the expiration of the primary term of this lease, oil or gas is not being produced on the leased premises, but lessee is then engaged in drilling for oil or gas, then this lease shall continue in force so long as drilling operations are being continuously prosecuted on the leased premises; and drilling operations shall be considered to be continuously prosecuted if not more than sixty (60) days shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of a subsequent well. If oil or gas shall be discovered and produced from any such well or wells drilled or being drilled at or after the expiration of the primary term of this lease, this lease shall continue in force so long as oil or gas shall be produced from the leased premises.

█ Bargsley argues that he was engaged in "operations" during the primary term and that the continuous operations provision kept his lease alive past the end of the primary term.[2] Those operations consisted of long-stroking[3] the existing oil well in November 1997; laying a pipeline to the gas wells (beginning in November 1997 and completing on January 20, 1998); doing electrical work on the lease; allowing the electricity to remain on; installing, checking, and repairing flow lines; replacing a tank; and allowing all of the equipment to remain on the wells.

While these activities under certain circumstances might be considered to be "operations," that is a question we do not address as these "operations" are not "drilling operations" as a matter of law. The operations undertaken by Bargsley were not preliminary to the actual work of drilling. The cases that Bargsley relies upon are distinguishable. For instance, in *Whelan*, the lease contained a similar drilling operations provision. *Whelan v. R. Lacy, Inc.*, 251 S.W.2d 175 (Tex.Civ.App.-Texarkana 1952, writ ref'd n.r.e.). The *Whelan* court held that preparing a location and moving a drilling rig on site were actual operations preparatory to drilling and, therefore, kept the lease alive. *Id.*

In *Ridge Oil Co. v. Guinn Investments, Inc.*, 148 S.W.3d 143 (Tex.2004), the Texas Supreme Court, although confronted with temporary and permanent cessation of production issues in that case, informed us that drilling operations require much more than appears in the summary judgment proof in this case. There, the lease provided for a primary term of five years "and as long thereafter as oil or gas, or either of them is produced from said land by the lessee, or as long as operations are being carried on." *Id.* at 147–48. Guinn had obtained a drilling permit, attempted to pay damages to gain entry to the property, and had driven a wooden stake into the ground to mark the location of the proposed well. The lease in *Guinn* did not require "drilling operations" but, rather, required only "operations." Even under those circumstances, the court held that

---

2. The Pryor appellees agree that there was a fact question regarding whether there was production of oil at the end of the primary term. That question was not decided by summary judgment but, rather, was presented to a jury. Issues related to that jury verdict will be discussed later in this opinion.

3. "Long-stroking" is the process where the length of the pump's stroke is increased resulting in increased pumping capabilities.

the steps taken by the lessee were not enough to continue the lease beyond the primary term. Here, it is undisputed that no well was ever commenced on the lease following the execution of the 1996 lease, even though the type of operations required under the lease were "drilling operations."

Bargsley maintains that the court in *Guinn* cited this court's opinion in *Morrison v. Swaim*, 220 S.W.2d 493, 494–96 (Tex.Civ.App.-Eastland 1949, writ ref'd n.r.e.), for the proposition that reworking activities such as "cleaning a well, building a fence, shooting a well with dynamite, pulling casing, running rods and tubing, cleaning and repairing the tank and installing power constituted evidence of 'drilling operations.'" However, first of all, there were no reworking activities in *Morrison:* the lessee was completing the drilling of a well that was begun during the primary term of the lease. In contrast to the case before us, this court in *Morrison* detailed the many steps taken by the lessee to complete the well. Further, *Morrison* did not involve simply "operations" as argued by Bargsley. The lease in *Morrison* called for "drilling operations," and that is what the lessee there did. We also note that this court's holding in *Morrison* was ultimately based on the fact that no jury issue was submitted or requested regarding the existence of drilling operations at the end of the primary term. Therefore, the evidence had to conclusively establish the lack of such drilling operations, and it did not. Thus, this court presumed that the trial court found the existence of such drilling operations. *Id.* at 497.

Bargsley relies upon *Utley v. Marathon Oil Co.*, 31 S.W.3d 274 (Tex.App.-Waco 2000, no pet.). *Utley* involved a continuous operations clause which referred to "oper-ations for drilling, mining, or reworking." In its instructions to the jury, the trial court defined "operations" as "actual work being done in a good faith endeavor to cause a well to produce oil and/or gas in paying quantities." *Id.* at 278. There was no objection to the instruction. The Waco Court of Appeals reviewed the evidence in light of that instruction and found no "reason to disturb the [jury's] finding." *Id.* at 279. However, even though there was some evidence regarding construction of a pipeline, the court specifically stated that it did not reach the issue of whether such construction constituted "operations." *Id.* at 280. Further, the lease in this case did not refer simply to "operations" or to "reworking operations." Bargsley was not engaged in drilling operations at the end of the primary term, and the trial court did not err if it so held in its partial summary judgment.

In his reply brief, Bargsley makes it clear that he "does *not* contend that he was entitled to a 'reasonable time to market his gas.'" Bargsley instead maintains that he was "entitled to a reasonable time to lay pipe to connect the gas wells to the purchaser." He acknowledges that in *Reid* the Texas Supreme Court rejected that argument under certain circumstances. *Gulf Oil Corp. v. Reid*, 161 Tex. 51, 337 S.W.2d 267, 270 (1960). However, he adds that the court in *Reid* did say that laying and connecting pipe were "drilling operations" such as would extend the lease past its primary term. We disagree that *Reid* stands for that proposition; the court specifically excluded such a holding.

In *Reid*, Gulf Oil Corporation began the drilling of a well a few days before the primary lease term had expired. Those drilling operations continued after the end of the primary term until the well was

completed. Because there were no market facilities, the well was capped. Gulf tendered shut-in royalties, but the tender was late and was refused. Some five months after completion of the well, Gulf entered into a contract for the sale of the gas. Approximately ten months after the well was completed, gathering lines had been laid and connected to the well. The court held that the shut-in royalties were late and the lease terminated. Regarding the question of whether the laying of pipelines constituted "drilling operations," the court said, "That question we do not reach." *Id.*

Because we hold that there were no drilling operations at the end of the primary term, we need not address Bargsley's argument that the lease required that he completely abandon the premises before it could be said that there were no drilling operations being conducted on the premises. We do note, however, that that is not what the lease provides. The lease provides that drilling operations are to be deemed to be "continuously prosecuted if not more than sixty (60) days shall lapse between the complete abandonment of one well and the beginning of operations for the drilling of another well." Here, there were no drilling operations at the end of the primary term; that provision does not apply.

■ Bargsley next argues that summary judgment should not have been granted as to the entire property because under the lease he was entitled to retain twenty acres around each well that fell within the following lease provision:

> In case of cancellation or termination of this lease for any cause, lessee shall have the right to retain under the terms hereof twenty (20) acres of land around each oil or gas well producing, being worked on or drilling hereunder.

Under the summary judgment evidence in this cause, any production in paying quantities under the lease would hold the entire 320 acres and this provision is not implicated. There may be other circumstances in the future which might bring about cancellation or termination of the lease that are not related to production; however, those circumstances are not before us. The parties agree that there is a fact question related to production, and that issue was submitted to a jury. Appellant argues that there is also a fact question regarding whether the oil well was "being worked on." We agree that under the circumstances of this case, if the lease were cancelled or terminated for reasons unrelated to production, Bargsley would be entitled to retain twenty acres around each oil or gas well being worked on. We have set forth summary judgment evidence above that, although not qualifying as "drilling operations," presents a genuine issue of material fact concerning whether the oil well was "being worked on" upon termination of the lease. That issue should be submitted to a jury if the jury finds that there was not production sufficient to extend the primary term of the lease. The trial court erred if it granted summary judgment based upon a determination that, as a matter of law, the oil well was not being worked on at the end of the primary term.

The trial court granted the partial motion for summary judgment without specifying the grounds for granting it. Therefore, we must uphold the partial summary judgment if any of the grounds advanced by Pryor were meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). Bargsley's first issue on appeal is overruled except as it pertains to the issue of whether the oil well was being

worked on as set forth in the retained acreage provision of the 1996 lease at the time of the termination of the 1996 lease if the lease was terminated due to a lack of production in paying quantities. If the fact-finder finds under proper instructions that there was no production in paying quantities at the end of the primary term, then the fact-finder should be asked whether the oil well was "being worked on" at the end of the primary term as provided for in the acreage retention clause.

## Jury Charge Error

■ Bargsley argues in his second issue on appeal that the trial court improperly placed the burden of proof regarding the existence of production upon him. We use an abuse of discretion standard when we review such a complaint. *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). When a trial court's action is arbitrary, unreasonable, and without reference to any guiding rules or principles, it has abused its discretion. *Goode v. Shoukfeh*, 943 S.W.2d 441 (Tex.1997).

■ The burden was upon Pryor to establish the lack of production in paying quantities. *Morrison*, 220 S.W.2d at 495. We agree with Bargsley that the burden of proof was misplaced.

Bargsley objected: "[In] connection with Question No. 1, the defendant (Bargsley) would submit that the issue as framed that the burden of proof is incorrect." Pryor argues that the objection was not specific enough to advise the trial court of the exact complaint made and that any error is waived. Pryor also argues that the burden of proof was not placed in the question but, rather, in the instructions. Pryor argues that, because Bargsley neither objected to nor submitted an instruction in which the burden of proof was correctly placed, any error is waived. We disagree.

Tex.R. Civ. P. 277 provides that a trial court shall, when it is feasible to do so, submit cases to juries upon broad-form questions. The rule also allows a trial court to place the burden of proof in an instruction rather than in the question. Here, the trial court generally instructed the jury in relevant part:

> Answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer must be based on a preponderance of the evidence. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No."

This question was then submitted to the jury:

Question No. 1

> Do you find that oil in paying quantities was produced from The Premises under the terms of The 1996 Lease on or before December 9, 1997?

>> "Production of oil in paying quantities" means that production must be sufficient to pay the lessee a profit, though small, over operating and marketing expenses, although it may never repay the cost of drilling the well. It does not mean a well merely capable of producing oil, but rather, means actual production of oil from the well which is sold in the market at a profit.

The jury answered, "No."

The instruction and the question improperly place the burden upon Bargsley to prove that there was production in paying quantities at the end of the primary term. Bargsley informed the trial court of his objection regarding the placing of the

burden of proof. TEX.R. CIV. P. 274 requires a party who objects to a jury charge to "point out distinctly the objectionable matter and the grounds of the objection." We hold that Bargsley did that: his objection was specific enough to bring to the trial court's attention the point that the burden of proof was misplaced.

■ Having found that the burden of proof was misplaced in connection with production, we must now decide whether the error probably caused the rendition of an improper judgment. If it did, then the judgment of the trial court must be reversed. *Kiefer v. Cont'l Airlines, Inc.*, 10 S.W.3d 34, 37 (Tex.App.-Houston [14th Dist.] 1999, pet. denied); *see also* TEX. R.APP. P. 44.1(a)(1). In determining what effect an erroneous jury charge has had on a judgment, we take into consideration the pleadings, the evidence, and the entire charge. *Kiefer*, 10 S.W.3d at 37.

We hold that the error in the jury charge probably caused the rendition of an improper judgment. This question is not just one of many issues before the jury. Whether there was production in paying quantities under the 1996 lease was the critical issue in this case. Under the instructions given to the jury in this case, Bargsley was erroneously required to prove not only that there was production but also that such production was in paying quantities. The burden was clearly upon Pryor to prove that there was no such production. Bargsley correctly points out that the jury easily could have thought that neither side could prove this issue and, because the court had told them that it was Bargsley's burden, it could only

find that Bargsley had failed to establish that there was production in paying quantities.[4] Bargsley's second issue on appeal is sustained.

In view of our holding on Bargsley's first issue on appeal, we need not discuss the sufficiency-of-the-evidence issues raised by him in issues three and four.

■ In his fifth issue on appeal, Bargsley argues that the trial court wrongfully enjoined him from removing the casing from any wells on the property that were capable of or were in fact producing oil or gas. The court found that the "The Premises" were capable of and were in fact productive of oil and gas. The trial court held that under such circumstances the removal of the casing would be against public policy and would constitute a waste of natural resources in that it would destroy the well bores and thereby reduce the net oil recoverable from the premises. The court did not err in denying Bargsley the right to remove the casing from the wells which are reasonably capable of producing for so long as they are reasonably capable of producing. *Eubank v. Twin Mountain Oil Corp.*, 406 S.W.2d 789 (Tex. Civ.App.-Eastland 1966, writ ref. n.r.e.). Pryor concedes that the cases support this position but urges this court to overrule them. We leave that matter to the Texas Supreme Court. Bargsley's fifth issue on appeal is overruled. We note that, if Pryor fails to prove a lack of production in paying quantities at the end of the primary term, then the trial court should dissolve the injunction.

### This Court's Ruling

The trial court's declaration that Coy Bargsley's lease terminated for lack of

---

**4.** The jury did find, in Question No. 2, that, after the last date of the one year primary term, Bargsley produced oil and gas from the premises in good faith; and the trial court awarded him $16,109.77 as recovery of costs of operations "subsequent to the termination" of the lease.

production in paying quantities is reversed, and that issue is remanded. Consequently, to the extent that the trial court declared that the Pryor lease was superior to the Bargsley lease, the judgment is also reversed and remanded. Further, to the extent that the partial summary judgment addresses the fact issue of whether the oil well was "being worked on," it is reversed, and that issue should be presented to the fact-finder in accordance with this opinion. Likewise, the award of attorney's fees is reversed and remanded for further consideration. In all other respects, the judgment of the trial court is affirmed.