

# NUMBER 13-19-00043-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE THE COMMITMENT OF JOSE OVALLE

### On appeal from the 347th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Perkes
### Memorandum Opinion by Justice Longoria

After a jury found appellant Jose Ovalle to be a sexually violent predator (SVP), the trial court civilly committed Ovalle for sex-offender treatment and supervision. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.081. By four issues, Ovalle argues: (1) the trial court's response to the first jury's note constituted reversible error; (2) he has probably been prevented from presenting his appeal because the jury's second note went missing; (3) the evidence was legally insufficient to support the jury's finding that he is an SVP;

and (4) the evidence was factually insufficient to support the finding that he is an SVP. We affirm.

## I. BACKGROUND

In 2018, Ovalle was incarcerated in the Texas Department of Criminal Justice— Institutional Division (TDCJID) when the State filed its original petition requesting Ovalle be civilly committed for treatment and supervision because of his alleged status as an SVP. *See id.* § 841.001.

### A. Ovalle's History of Sexual Offenses

On October 29, 2018, the trial on Ovalle's civil commitment began. The State's sole witness was Darrel Turner, a clinical psychologist that specializes in forensic psychology. He was retained by the State to evaluate Ovalle and opine as to whether Ovalle displayed a behavioral abnormality that warranted civil commitment. *See id.* § 841.001. According to Turner, he begins his evaluation process by reviewing the records and documents pertaining to the individual in question. He then personally interviews the individual in question, performs some psychological testing, identifies both risk factors and protective factors regarding the individual's likelihood of committing future predatory sexual offenses, and then comes to a final opinion.

Turner recounted Ovalle's history of sexual violence. According to the records and criminal history that Turner reviewed, Ovalle's first conviction of a sexually violent offense was in 1999 when he was convicted for sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.011(a)(2). The underlying offense was committed in 1998 when Ovalle was twenty-two years old and on probation for possession of cocaine. At the time, Ovalle had known the victim, a thirteen-year old girl, for about one year. Ovalle went to the home of

2

the girl, entered through her bedroom window around 3:00 a.m., and they had sex on the bedroom floor. Ovalle admitted that he was intoxicated that night. Ovalle was sentenced to thirty months' imprisonment.

The second sexual offense occurred in 2002, shortly after being released from prison for his first sexual offense. Ovalle was twenty-five years old and married. The victim in this case was Ovalle's six-year-old stepdaughter. According to the record, Ovalle had sex with his wife then took his stepdaughter from her bed to the couch and fondled her vagina. Ovalle's wife walked in and confronted him; Ovalle denied all wrongdoing but the girl confirmed the abuse. Ovalle was convicted for indecency with a child and placed on community supervision for five years. *See id.* § 21.11(a)(1).

The third sexual offense occurred in 2004, just two years after—and while Ovalle was still on community supervision for—the second sexual offense. The victim was Ovalle's six-year old niece. According to the record, Ovalle was babysitting the girl and either penetrated or attempted to penetrate her anus with his penis. Ovalle also admitted that he was drinking and using drugs at the time of the offense. He was sentenced to twenty years' imprisonment for the second sexual offense and ten years' imprisonment for the third sexual offense, and the sentences were ordered to run concurrently. The State filed its original petition to have Ovalle civilly committed during this incarceration period.

Turner testified that when he interviewed Ovalle, Ovalle initially denied all wrongdoing.

**B. Ovalle's Test Results**

Turner testified concerning some of the tests he used in evaluating Ovalle. First, using the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), Turner diagnosed Ovalle with pedophilic disorder, which is a pattern of on-going attraction to prepubescent children. Turner testified that the age of thirteen is usually considered a boundary between prepubescent and postpubescent. If the person is eleven or twelve, then it depends on the development of the child; however, in Ovalle's case, "it is pretty clear" he is attracted to prepubescent children because he committed sexual offenses against two different six-year old children, just two years apart.

Turner also diagnosed Ovalle with antisocial personality disorder. Turner testified that individuals with this diagnosis "are not rule followers. They generally have problems with authority. . . . They tend to be manipulative, lacking empathy in other people, and they are willing to victimize other people to get what they want." Turner opined that Ovalle displayed signs of antisocial personality disorder all throughout his life. In his youth, he was in a gang and was arrested for theft, possession of marijuana, and assault. The record also indicated that he traded drugs for sex at a young age. Turner explained that psychopathy is an extreme degree of antisocial personality disorder and that psychopaths lack moral reasoning. Turner testified that he employed the Psychopathy Checklist-Revised (PCL-R) to gauge Ovalle's level of psychopathy. Ovalle scored a 29 on the PCL-R, which is in the "high range of psychopathic characteristics and even in the upper range of high range, approaching severe range." Ovalle received such a high score for being cunning and manipulative, pathological lying, and lacking remorse and empathy. According to Turner, it is unusual for a pedophile to receive such a high PCL-R score.

4

Turner also evaluated Ovalle on the Static-99R, which Turner testified is an actuarial instrument to estimate the risk of being convicted for a sexual offense in the future. Ovalle scored a four on this test, meaning he was in the above-average range of risk; more specifically, a score of four indicates that Ovalle is twice as likely to reoffend compared to the average sex offender. However, Turner testified that Ovalle's range of risk is even higher than what the Static-99R score indicated because that test score does not take into consideration his pedophilia diagnosis, sexually offending while on probation, having both prepubescent and postpubescent victims inside and outside of the family, or Ovalle's history of substance abuse.

## C. Risk Factors and Protective Factors

Turner testified concerning several recidivism risk factors he observed while reviewing Ovalle's convictions. According to Turner, two of the biggest risk factors are sexual deviance and antisocial orientation. Turner defined sexual deviance in this context as a sexual interest that requires victimizing someone in order to satisfy their own sexual urge; pedophilic disorder is an example of sexual deviance. When a person possesses both sexual deviance and antisocial traits, the person is "especially dangerous." Thus, because Ovalle has both sexual deviance and antisocial traits, it is a large risk factor for him.

Turner further testified concerning some of the specific risk factors he identified. Concerning the 1999 offense, Turner stated:

> Well, it starts to become a problem when the version of something as significant as a sexual assault changes across time. So we have outright denial and then we have admittance. But I did not know how old she was and she is a bit promiscuous herself. We see it changing and we don't want to see it change. We want to see a sex offender admit in full to their offense,

5

admit to what they did, recognize any effect that it may have had on the victim and we are not really seeing that in this case.

. . . .

But committing a sexual offense while you are being supervised is something that speaks directly to the question of behavioral abnormality. This is a person that had eyes on him. He was suppose[d] be reporting. There were certain things [Ovalle] was suppose[d] to be doing; substance abuse treatment, things of that nature and he wasn't. This was a second chance and during that second chance, he committed a sexual offense. So it speaks to his ability to control his behaviors as the definition talks about volitional control. So it is very important.

. . . .

Research shows that sex offenders who offend while they are intoxicated are actually at an increased risk of being arrested or convicted for another sex offense in the future. So Mr. Ovalle admitted to being intoxicated on cocaine and alcohol that night, so that acts as a risk factor in this case.

Regarding the 2002 offense, Turner identified a few additional risk factors, such as reoffending after being punished and admitting to being intoxicated again. According to Turner, reoffending after being punished is a "huge risk factor." More importantly, Turner added:

We are now talking about a six year old girl that he was in a caregiver role for her and so for him to not admit what he did, especially given the fact that he is currently in treatment in sex offender treatment [sic], for him to deny that offense and then deny denying the offense and then only admit to only touching her bottom and then when confronted with records then finally say, okay, I touched her vagina. It's problematic. He is lacking insight. He's lacking in understanding of how serious these offenses are and he is not understanding the impact that these offenses have had on the victims.

With regard to the 2004 offense, Turner opined that it was the most concerning of the three offenses:

Well, in this case, we are seeing—we are seeing the offending behavior escalate. So we are going from touching the vagina to making an attempt of insertion. Again, with people present. Again, while on

6

supervision. Again, while being given another chance. So the [brazenness] is increasing . . . his risk that he is willing to perpetrate against children when others can conceivably find him.

. . . .

Well, I think this is one of the most important aspects in defining his behavioral abnormality. A behavioral abnormality is a condition that makes a person likely to reoffend. So when we look at his behavior, that's what we see. We see him offend against a 13 year old. We see him reoffend after that punishment against a six year old and then while being on supervision given probation for that sentence, he offends again. So this is someone with problems controlling his behavior. This is someone with problems controlling those sexual urges to the point that he is acting out on them and they are repeatedly landing him in legal trouble.

Turner cited Ovalle's sexual assault of both family members and non-family members as an additional risk factor:

Now that we have a family victim [sic] increases his victim pool even further. So not only do we have a post-pubescent victim and prepubescent victims, but we also have victims outside of the family and victims inside the family. So that is going to increase his risk as well because the potential victim pool is getting larger.

Turner also observed several protective factors, which are factors that mitigate or reduce the risk of committing further sexual offenses. Turner testified that Ovalle's largest protective factor is the fact that he was forty-two years old at the time of the hearing. Turner testified that recidivism rates for sexual offenders decrease with age. Turner also noted that while Ovalle was in prison, he obtained his GED and only "had a few disciplinary infractions . . . but nothing major." Turner identified other protective factors, such as Ovalle not having any male victims or victims that were complete strangers to him. Turner additionally noted that Ovalle had attended an "intensive inpatient sex offender treatment program," which could be a protective factor. However, Turner

contacted the providers of the treatment program and testified that he does not believe

Ovalle progressed very much in the program.

When Turner was asked how the three offenses factored into his conclusion

concerning whether Ovalle suffers from a behavioral abnormality, Turner answered:

> When we look at the definition, we are trying to decide if he has a condition that predisposes [him] to engage in the very acts that he is engaging in repeatedly. Another thing about the [2004 offense] that ties into that question is the fact that it occurred not only while he was on supervision and while register[ed] as a sex offender but relatively briefly, maybe two years after the [2002 offense]. As we saw earlier, not a lot of time in free society without committing a sexual offense. So this is an urge. This is clear evidence of difficulty with volitional control which is in the definition and acting out sexually which is in the definition.

Based on all of the above, Turner opined that Ovalle suffers from a behavioral abnormality

that makes him likely to commit predatory acts of sexual violence. The only other witness

to testify was Ovalle himself. He admitted to committing the offenses but claimed that he

was not attracted to children. Instead, he said alcohol and drugs were his trigger and that

accordingly, he would seek substance abuse treatment.

The jury unanimously found that Ovalle is an SVP. The trial court civilly committed

Ovalle for sex-offender treatment and supervision. *See* TEX. HEALTH & SAFETY CODE ANN.

§ 841.081. Ovalle filed a motion for new trial, which was overruled by operation of law.

This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

In his third and fourth issues, which we address first, Ovalle argues that there was

legally and factually insufficient evidence to support a finding beyond a reasonable doubt

that he is an SVP.

8

**A. Standard of Review and Applicable Law**

We review SVP civil commitment proceedings for legal sufficiency of the evidence using the appellate standard of review applied in criminal cases. *In re Commitment of Short*, 521 S.W.3d 908, 911 (Tex. App.—Fort Worth 2017, no pet.). We assess the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the statutory elements required for commitment beyond a reasonable doubt. *Id.*

"When reviewing the factual sufficiency of the evidence to support a civil commitment order, we weigh all the evidence to determine whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Id.* We do so by viewing all the evidence in a neutral light and asking whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *See In re Commitment of Day*, 342 S.W.3d 193, 206 (Tex. App.—Beaumont 2011, pet. denied).

Chapter 841 of the Texas Health and Safety Code (the SVP Act) provides a procedure for the involuntary civil commitment of an SVP. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.153; *see also In re Commitment of Hull*, No. 13-17-00378-CV, 2019 WL 3241883, at *1 (Tex. App.—Corpus Christi–Edinburg July 18, 2019, pet. filed) (mem. op.) (detailing the background and purpose of SVP statutes in Texas). A person can only be civilly committed if the factfinder determines, by a unanimous verdict and beyond a reasonable doubt, that the person is an SVP. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.062, 841.081. An SVP is a person that (1) is a repeat sexually violent offender, and (2) suffers from a behavioral abnormality that makes him likely to engage

9

in a predatory act of sexual violence. *Id.* § 841.003(a). A person is a repeat sexually violent offender if the person is convicted of more than one sexually violent offense and a sentence is imposed on at least one of those convictions. *Id.* § 841.003(b). A behavioral abnormality is defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

## B. Analysis

Ovalle does not dispute the first SVP prong. The State moved for a directed verdict that Ovalle is a repeat sexual offender, and Ovalle stated he had no objections. However, Ovalle challenges the second SVP prong, arguing that the evidence was legally and factually insufficient to show that he suffers from a behavioral abnormality. *See id.* § 841.003(a), (b).

### 1. Legal Sufficiency

Ovalle first complains that Turner's testimony did not sufficiently support his diagnosis of Ovalle with pedophilic disorder. In other words, Ovalle argues that Turner's testimony did not establish that Ovalle was a "true pedophile"; instead, the evidence suggested that Ovalle was "more of an opportunistic child sex offender." Thus, Ovalle argues the evidence is insufficient to support a finding that he has a behavioral abnormality. Ovalle also argues that the mere fact he committed two sexual offenses against prepubescent children, and one offense against a postpubescent child, does not establish that he is a member of that "small but extremely dangerous group of sexually violent predators" that Chapter 841 is meant to address. The State counters that when

10

the evidence is viewed in the light most favorable to the verdict, a rational trier of fact could find the statutory elements required for commitment beyond a reasonable doubt. We agree with the State.

In a civil commitment case, the State does not need to prove that Ovalle is a "true pedophile" or that he is necessarily a member of the "small but extremely dangerous group of sexually violent predators" that Chapter 841 is meant to address. Instead, the State only needs to prove beyond a reasonable doubt that Ovalle is an SVP. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.062(a). Thus, the State needed to prove that Ovalle (1) is a repeat sexually violent offender, and (2) suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a). Because Ovalle does not dispute the first prong, the only fact issue that needed to be resolved is whether Ovalle has a behavioral abnormality. *Id.* § 841.002(2).

Turner testified regarding all of the resources he consulted in forming his opinions, including criminal records, court records, parole records, prison records, depositions, his use of actuarial tests, and his interview with Ovalle. Turner then discussed the various risk factors he considered and how they affected his overall conclusion regarding Ovalle's likelihood to commit a predatory act of sexual violence in the future. Turner opined that Ovalle suffers from a behavioral abnormality that predisposes him to committing sexually violent offenses; Ovalle was the only other witness at trial but he did not offer an opinion as to whether he possessed a behavioral abnormality.

Assessing the evidence in the light most favorable to the verdict, we conclude there was more than a scintilla of evidence to support the jury's finding beyond a reasonable

11

doubt. *See In re Commitment of Short*, 521 S.W.3d at 911. We overrule Ovalle's third issue.

### 2. Factual Sufficiency

We first note that the State asserts that it is unnecessary to conduct a factual sufficiency review in civil cases where the burden of proof is beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (abolishing factual sufficiency review in criminal cases). The State highlights that several courts of appeal, including this Court, have adopted a single-sufficiency standard in juvenile adjudication cases. *See In re T.E.G.*, 222 S.W.3d 677, 678 (Tex. App.—Eastland 2007, no pet.); *In re C.G.,* 162 S.W.3d 448, 452 (Tex. App.—Dallas 2005, no pet.); *In re H.R.C.,* 153 S.W.3d 266, 269 (Tex. App.—El Paso 2004, no pet.); *In re J.D.P.,* 85 S.W.3d 420, 426 (Tex. App.—Fort Worth 2002, no pet.); *In re T.K.E.,* 5 S.W.3d 782, 785 (Tex. App.—San Antonio 1999, no pet.); *In re K.L.C.,* 972 S.W.2d 203, 206 (Tex. App.—Beaumont 1998, no pet.); *but see In re C.C.,* 13 S.W.3d 854, 858 (Tex. App.—Austin 2000, no pet.); *see also In re C.D.*, No. 13-12-00644-CV, 2013 WL 3203220, at *2 n.3 (Tex. App.—Corpus Christi–Edinburg June 20, 2013, no pet.) (mem. op.). However, as the State concedes, neither this Court or the Texas Supreme Court has considered the question of whether factual sufficiency review should be continued or abolished in civil commitment cases. Thus, in an abundance of caution, we shall address Ovalle's fourth issue regarding the factual sufficiency of the evidence. *See In re Commitment of Day*, 342 S.W.3d at 213 (noting that "commitment proceedings are decided on evidence that concerns the application of a 'soft' science that calls for the exercise of a considerable amount of intuitive judgment on the part of experts with specialized training" and

concluding that the "consequences of an incorrect judgment are great enough that the legal system should retain a factual sufficiency standard of review to minimize the risk of an injustice").

In our factual sufficiency analysis, we weigh all of the evidence in a neutral light to determine whether the jury's finding is so against the great weight and preponderance as to be manifestly unjust. *See id.* at 206. But in cases where the burden of proof is beyond-a-reasonable-doubt, "the risk of injustice is essentially slight." *Id.* at 213.

Turner testified that Ovalle committed his first sexual offense while on community supervision for a drug offense. Ovalle was twenty-two years old at the time of the first offense while the victim was thirteen-years old. Ovalle entered the victim's home through the window early in the morning and they had sex on her bedroom floor. According to the record, the girl expressed concern over getting pregnant, and Ovalle told her that if she drank an entire bottle of liquor it would kill the baby. Ovalle told Turner during an interview that he never told her to drink alcohol; however, Ovalle admitted that he was intoxicated at the time of the incident. Ovalle also alleged that the girl told him that she was eighteen; thus, he believed the sexual encounter was consensual.

Ovalle committed his second sexually violent offense shortly after being released from prison for his first sexual offense. The second offense occurred when Ovalle was twenty-five years old and married. But instead of being a post-pubescent teenager outside of his family, the victim this time was his six-year-old stepdaughter. According to the record, after Ovalle had sex with his wife, he took his stepdaughter to the couch and fondled her vagina. During Turner's interview, Ovalle denied that he touched the girl's vagina. Then, according to Turner, Ovalle denied having ever denied the allegation. He

13

only admitted that he touched her when he was confronted with the documents where he pleaded guilty to touching her vagina.

Ovalle committed his third sexual offense just two years after committing, and while still on probation for, his second sexual offense. This time, Ovalle's victim was his six-year-old niece. While he was babysitting her, Ovalle penetrated or attempted to penetrate her anus with his penis. Ovalle denied the allegations to Turner and asserted that the allegations were motivated by revenge because he was not getting along with the victim's father. Turner noted that in the deposition for the current case, Ovalle started by conceding that he might have "accidentally brushed against her buttocks" but he denied touching her with his penis. However, once again, Turner testified that Ovalle only admitted to committing the offense when he was confronted with his plea of guilty.

Turner testified concerning Ovalle's results on various tests. Using the DSM-5, Turner diagnosed Ovalle with pedophilic disorder. According to Turner, "it is pretty clear" that Ovalle is attracted to prepubescent children because in a two-year span, he committed sexual offenses against two different six-year old children in his family.

Turner also diagnosed Ovalle with antisocial personality disorder. According to Turner, Ovalle has displayed signs of antisocial personality disorder all throughout his life. In his youth, he traded drugs for sex, was in a gang, and was arrested for theft, possession of marijuana, and assault. Turner explained that psychopathy is an extreme degree of antisocial personality disorder and that it was unusual for pedophiles to score high on the psychopathy scale. However, Turner testified that Ovalle scored a 29 on the PCL-R, placing him in the "high range of psychopathic characteristics and even in the upper range of high range, approaching severe range."

14

Turner also evaluated Ovalle on the Static-99R to measure his risk of committing further sexual offenses in the future. Ovalle scored a four on this test, meaning he was in the above-average range of risk; however, Turner testified that Ovalle's range of risk is even higher than what the Static-99R score indicated because that test score does not take into consideration Ovalle's risk factors, such as his pedophilia, offending while on probation, having both prepubescent and postpubescent victims inside and outside of the family, or Ovalle's history of substance abuse.

Turner further testified concerning Ovalle's risk factors. According to Turner, sexual deviance and antisocial personality orientation represent the two largest risk factors in predicting whether an individual will commit predatory acts of sexual violence. Turner asserted that Ovalle's pedophilia is a sexual deviance. Accordingly, because Ovalle exhibits both sexual deviance and an antisocial orientation, Turner opined that Ovalle is "especially dangerous."

Turner also testified concerning some of the specific risk factors he identified when reviewing Ovalle's sexual offenses. Concerning the first offense against the thirteen-year-old, Turner testified he was concerned with Ovalle's failure to take responsibility for the offense. Turner observed that Ovalle blamed the victim and changed his version of what happened as time went on. Ovalle also denied the allegations on multiple occasions, which Turner found to be problematic. Even more concerning, Turner opined that committing a sexual offense like this while on community supervision "speaks directly to the question of behavioral abnormality" because it reflects Ovalle's lack of volitional control over his behavior.

Regarding the second offense, Turner testified that committing this offense shortly after being released from prison for the first offense is a significant risk factor. Turner also testified to Ovalle's lack of understanding how serious these offenses are and his failure to understand the impact these offenses have on the victims.

Concerning the third sexual offense, Turner opined that it was very representative of Ovalle's overall behavioral abnormality because it demonstrates that Ovalle has problematic sexual urges that he has trouble controlling. According to Turner, the third offense is the most significant in determining Ovalle's behavioral abnormality because of the implications. Turner was on supervision and was "given another chance" and yet he reoffended anyway, while other people were home. This suggests that Ovalle has sexual urges that he has difficulty controlling. Turner also displayed concern that Ovalle was intoxicated during all three offenses because substance abuse is related to an increased risk for committing sexual offenses. Turner further noted that Ovalle had committed sexual offenses against both family members and non-family members, which is alarming because the "potential victim pool is getting larger."

Turner next discussed some of Ovalle's protective factors. Ovalle's largest protective factor is his age; Ovalle is now forty-three years old and recidivism rates for sexual offenders decreases with age. It is also true that while Ovalle was in prison, he obtained his GED and only received a few minor disciplinary actions. Turner indicated other protective factors, such as Ovalle not having any male victims or victims that were complete strangers to him. Turner additionally noted that Ovalle had attended an inpatient sex offender program, which could be a protective factor. However, Turner testified that it was not a protective factor in this particular case:

16

I think it's important that he was given an opportunity to receive treatment. He claims he was going to treatment and clearly that treatment did not provide him with tools that he could use to not reoffend or he chose to not use those tools. So that's an important one. They all matter because they all speak to just this irresponsibility and that speaks to antisociality.

Based on all of the above evidence, Turner opined that Ovalle suffers from a behavioral abnormality that makes him likely to commit predatory acts of sexual violence.

No other experts testified, but Ovalle testified on his own behalf. He testified that even though he initially denied the allegations because he was ashamed, he now admits he committed the offenses. However, Ovalle denies ever being sexually attracted to children; according to Ovalle, alcohol and drugs are his triggers. Ovalle claimed that he plans on getting treatment for his substance abuse. He testified that he does not think that he will ever commit another sexual offense.

Because we have already decided that the verdict is supported by legally sufficient evidence, the risk of injustice is "essentially slight." *Id.* at 213. Nevertheless, having weighed all the evidence in a neutral light, we see no injustice in the jury's verdict that requires a new trial. *See In re Commitment of Short*, 521 S.W.3d at 911. Turner's opinions were based on accepted techniques and the basis for his opinions were explained to the jury. The evidence is factually sufficient. We overrule Ovalle's fourth issue.

### III. THE JURY NOTES

In his first issue, Ovalle argues that the trial court's response to the jury's first note constituted reversible error. In his second issue, Ovalle argues "[t]he lost and missing second jury note has 'probably prevented' [Ovalle] from 'properly presenting' this case to this Court" because the jury's second note has been deemed "lost" by the district clerk and thus was not included in the appellate record.

17

**A. Standard of Review & Applicable Law**

We review jury charge error for abuse of discretion. *See Bargsley v. Pryor Petroleum Corp.*, 196 S.W.3d 823, 829 (Tex. App.—Eastland 2006, pet. denied). The trial court abuses its discretion when "its action is arbitrary, unreasonable, and without reference to any guiding rules or principles." *Id.* "When the trial judge responds substantively to a jury question during deliberations, that communication essentially amounts to an additional or supplemental jury instruction. . . . Therefore, in determining whether the subject matter of the communication was proper, we look to the rules governing instructions." *Daniell v. State*, 848 S.W.2d 145, 147 (Tex. Crim. App. 1993). A trial court must submit such instructions and definitions as shall be proper to enable the jury to render a verdict. *Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456, 482 (Tex. App.—Corpus Christi–Edinburg 2008, pet. denied). An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence. *Id.*; *see* TEX. R. CIV. P. 278. A trial court has wide discretion to determine the sufficiency of definitions and instructions. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 791 (Tex. 1995).

To obtain a reversal of a judgment on the basis of trial-court error in civil cases, the appellant must show that the alleged error "(1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals." TEX. R. APP. P. 44.1(a).

**B. Analysis**

In his first issue, Ovalle complains that the trial court's response to the jury's first question during deliberation was erroneous and probably caused the rendition of an

improper judgment. More specifically, he argues that the trial court erred by failing to clarify to the jury that it is the State's burden to prove its case. The State claims that the trial court did not err because the record reflects that there was no confusion as to who carried the burden. We agree with the State.

Throughout the case, the jury was told numerous times that the State had the burden to prove its case against Ovalle and that Ovalle had no burden to present any evidence. The jury was told during voir dire, opening statements, and closing arguments that the State needed to prove its case beyond a reasonable doubt. The trial court's written jury charge also instructed the jury as follows: "The burden of proof in this case rests solely on the petitioner. This means the petitioner must prove each element of its cause of action beyond a reasonable doubt."

Despite these constant reminders, Ovalle insists that the jury's first note suggests that it was confused as to who carried the burden. During deliberation, the jury sent a note to the judge asking, "Why didn't the defense provide an expert witness to refute Dr. Turner?" The trial court informed both parties' attorneys that its normal response would be to simply inform the jurors that they already have all of the evidence and that they should continue to deliberate. The trial court asked if there were any objections to such an instruction. Ovalle's attorney responded, "No objection other than maybe just the burden does rely [sic] on the State. Reminding them of that." The trial court, believing that such an instruction would be a "comment on the evidence," overruled the requested instruction. The trial court noted Ovalle's objection but only instructed the jury that it possessed all of the evidence and should continue deliberating.

Ovalle relies on two cases to argue that the trial court's alleged error in overruling his request probably caused the rendition of an improper judgment. *See FPL Farming Ltd. v. Envtl. Processing Sys., L.C.*, 383 S.W.3d 274 (Tex. App.—Beaumont 2012), *rev'd on other grounds*, 457 S.W.3d 414, 426 (Tex. 2015) (concluding that the trial court's error was harmful "[b]ecause the charge required FPL to prove an element on which it did not bear the burden of proof"); *Bargsley*, 196 S.W.3d at 830 (holding that the appellant was probably caused harm because the jury charge improperly placed the burden on appellant). However, we find these cases distinguishable because in both cases, the trial court affirmatively misplaced the burden. In contrast, in the present case, the trial court properly instructed the jury multiple times that the burden rests on the State to prove its case beyond a reasonable doubt; furthermore, the trial court in the present case never affirmatively misplaced the burden in its response to the jury note or at any other time. To the contrary, the jury was properly instructed multiple times throughout the trial regarding the proper burden of proof. Therefore, we cannot conclude that the trial court abused its discretion by failing to give the requested instruction. *See Bargsley*, 196 S.W.3d at 830. We overrule Ovalle's first issue.

In his second issue, concerning the second jury note, Ovalle argues that he was prevented from properly presenting his appeal. More specifically, he asserts that he was properly presented from making his appeal because the second jury note was not included in the clerk's record due to it being deemed "lost." The entirety of this argument is made within a single paragraph and without referencing any relevant authority. Accordingly, we find this issue to be inadequately briefed. *See* TEX. R. APP. P. 38.1(i). We overrule Ovalle's second issue.

## IV. Conclusion

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Delivered and filed the
26th day of March, 2020.